STATE OF NORTH CAROLINA v. R. C. (DICK) McCLUNEY, SR.

No. 7027SC635

(Filed 28 April 1971)

1. Obscenity— disseminating obscene magazine — sufficiency of evidence

State's evidence was sufficient to be submitted to the jury in a prosecution for disseminating an obscene magazine in violation of G.S. 14-189.1.

2. Obscenity— dissemination of obscenity

Contention by defendant that no material may be declared obscene unless it is (1) provided for juveniles, (2) offered in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it, or (3) advertised and promoted in a manner that amounts to pandering, *held* without merit.

3. Constitutional Law § 1— decision of lower federal court — effect on decision of Court of Appeals

Decision of a three-judge federal court which held G.S. 14-189.1 to be unconstitutional is not binding on the Court of Appeals, since lower federal courts and state courts have the same responsibility in passing on federal constitutional questions and both sets of courts are governed by the same reviewing authority of the U. S. Supreme Court.

4. Obscenity— disseminating obscenity — requisites for conviction

In order to convict a defendant of disseminating obscene material in violation of G.S. 14-189.1, the jury must find beyond a reasonable doubt that (1) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (2) the material is patently offensive because it affronts contemporary community standards; and (3) the material is utterly without redeeming social value.

State v. McCluney

5. Obscenity— disseminating obscenity — statutory presumption — constitutionality

Presumption created by G.S. 14-189.1 that one who disseminates obscenity knows the existence of the parts, pictures or contents which render it obscene is not unconstitutional, since the presumption is not an absolute presumption of law but is simply an evidential fact to be considered by the jury along with other facts in evidence in determining whether the State has carried the burden of proof on the question of scienter.

APPEAL from *Ervin, Superior Court Judge,* 24 November 1969 Criminal Session of GASTON County Superior Court.

Criminal prosecution on indictment charging defendant with the dissemination of obscenity in violation of G.S. 14-189.1. The case was tried during the 24 November 1969 Criminal Session of Gaston County Superior Court. The jury returned a verdict of guilty as charged and judgment was continued until 25 June 1970. At that time judgment was entered imposing a prison sentence which was suspended for a period of two years upon the payment of a fine and upon condition defendant remain of general good behavior. Defendant appealed.

*Attorney General Morgan by Staff Attorney Mitchell and Staff Attorney Lloyd for the State.*

*Norman B. Smith for defendant appellant.*

GRAHAM, Judge.

This charge arises out of defendant's sale of a magazine entitled *Young Beavers.* The sale took place on 10 November 1969 at the City News Stand in Gastonia. Only the cover of the magazine was displayed. When the magazine was purchased defendant took the contents from under the counter and inserted them in the cover.

[1] Defendant contends the material contained in the magazine is, as a matter of law, not obscene. We see no purpose in describing the details of the magazine's contents. Suffice to say, we have examined the contents and are of the opinion that the question of whether the material is obscene was one of fact to be passed upon by the jury and not a question of law to be determined by the court. Evidence presented by the State included the testimony of a practicing psychiatrist, a physician and surgeon, a professor of English, a skilled laborer and others. Their

testimony was sufficient to permit the jury to find that: (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. The able trial judge correctly instructed the jury as to these three elements and as to every other material facet of the case.

[2]  Defendant, citing and relying upon *Stanley v. Georgia,* 394 U.S. 557, 89 S. Ct. 1243, 22 L. Ed. 2d 542, and *Redrup v. New York,* 386 U.S. 767, 87 S. Ct. 1414, 18 L. Ed. 2d 515, argues that no material may be declared obscene unless it is: (1) provided for juveniles, (2) offered in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it, or (3) advertised and promoted in a manner that amounts to "pandering." There was no evidence that State's Exhibit 1 was used in any of these ways. However, we have studied with care the five separate opinions filed by Justices of the Supreme Court of the United States in the two cases cited. As pointed out in *Redrup,* one Justice is clearly of the opinion that the Constitution dictates the application of the restrictive standards urged here by defendant. Two other Justices would apparently insist that the First Amendment and Fourteenth Amendment impose absolute restrictions upon the federal and state governments in the regulation of any written material, including obscene material. However, we fail to find that the Supreme Court of the United States, either in the cases cited or in any other case, has held that obscene materials may be regulated, only when used in one of the three ways contended by defendant. Nor do we find that the opinions filed by the various Justices in these cases suggest that a majority of the members of the Supreme Court of the United States would so hold. We therefore reject defendant's argument that this case should have been dismissed because the magazine in question was not provided for juveniles, or offered or promoted in an "obtrusive" or "pandering" manner.

Defendant attacks as unconstitutional G.S. 14-189.1.

While this case was pending on appeal, a three-judge federal court considered the constitutionality of this statute in an action brought by different parties. *Shinall v. Worrell,* 319 F. Supp. 485 (E.D. N.C. 1970). That three-judge panel held the statute unconstitutional on its face "because it abridges the

State v. McCluney

Freedom of Speech Clause of the First Amendment made applicable to the states by the Fourteenth Amendment." No appeal was taken from that decision. Previously, a different three-judge panel, from the same circuit, had upheld the Virginia obscenity statute which is similar in essential respects to G.S. 14-189.1. *Grove Press, Inc. v. Evans,* 306 F. Supp. 1084 (E.D. Va. 1969). A similar Texas statute was stricken down by a three-judge federal court as unconstitutional on its face. *Stein v. Batchelor,* 300 F. Supp. 602 (N.D. Tex. 1969). This case was appealed and arguments were heard in the Supreme Court of the United States in November of 1970. We awaited a decision in that case in the hope some stable approach to the obscenity problem would come forth. However, by recent decision, the Supreme Court remanded the case on the ground "that federal intervention affecting pending state criminal prosecutions, either by injunction or by declaratory judgment, is proper only where irreparable injury is threatened." In the *per curiam* majority opinion the court held that there had been no showing that irreparable injury was threatened. *Dyson v. Stein,* 401 U.S. 200, 91 S. Ct. 769 (1971). Three other cases, arising from other states, were remanded on the same day on the same grounds. *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746 (1971); *Samuels v. Mackell,* 401 U.S. 66, 91 S. Ct. 764 (1971); and *Boyle v. Landry,* 401 U.S. 77, 91 S. Ct. 758 (1971). In *Younger* the court held that a threat of irreparable injury might be shown where the state criminal statute involved is *patently* and *flagrantly* unconstitutional on its face. We take this to mean that the court majority did not regard the Texas obscenity statute involved in *Stein* as *patently* and *flagrantly* unconstitutional on its face.

[3] We have great respect for the three-judge federal court which held G.S. 14-189.1 to be unconstitutional. We have given substantial consideration to its opinion. However, we are not bound to follow that decision since lower federal courts and state courts have the same responsibility in passing on federal constitutional questions and both sets of courts are governed by the same reviewing authority of the Supreme Court of the United States. United States, *ex rel. Lawrence v. Woods,* 432 F. 2d 1072 (7th Cir. 1970); *Owsley v. Peyton,* 352 F. 2d 804 (4th Cir. 1965). See also, *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404; *Iowa Nat. Bank v. Stewart,* 214 Iowa 1229, 232 N.W. 445; *State v. Coleman,* 46 N.J. 16, 214 A. 2d 393.

State v. McCluney

It is to be noted that no injunction accompanied the federal court's opinion with respect to the unconstitutionality of G.S. 14-189.1. Even where a federal court has issued an injunction against prosecution under a state statute, the injunction can be lifted and prosecution may follow if state courts give a constitutionally acceptable construction to the statute involved. *Dombrowski v. Pfister,* 380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22. "Thus, in *Dombrowski* itself the Court carefully reaffirmed the principle that even in the direct prosecution in the State's own courts, a valid narrowing construction can be applied to conduct occurring prior to the date when the narrowing construction was made, in the absence of fair warning problems." *Younger v. Harris,* 401 U.S. at 51, 91 S. Ct. at 754.

The opinion of the three-judge panel recognizes the unquestioned power of a state's highest court to authoritatively interpret (interpolate) a state statute: "We have carefully considered whether, by interpolation, we may save the Statute in whole or in part, and have decided that it is beyond redemption. We are not so free as are state courts to interpret state statutes *nor may we do so with finality.*" (Emphasis added.) 319 F. Supp. at p. 487.

The Supreme Court of this State has had no opportunity to interpret G.S. 14-189.1 in the light of certain tests that are apparently now required before the distribution of written material may be constitutionally inhibited. We must therefore undertake this task. We do so without any absolute understanding as to what constitutes essential constitutional tests. The federal panel recognized this difficulty in noting that in this particular area "the power of the state to censor and proscribe such materials has not yet been clearly determined." 319 F. Supp. at p. 489.

[4] For purposes of this opinion we agree with the federal panel that this State may not constitutionally inhibit the distribution of literary material as obscene unless "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." A Book Named *"John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General,* 383 U.S. 413, 86 S. Ct. 975, 16 L. Ed. 2d 1.

G.S. 14-189.1 (b) defines obscene as:

"(b) Obscene Defined; Method of Adjudication.—A thing is obscene if considered as a whole its predominant appeal is to the prurient interest, i.e., a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or presentation of such matters. A thing is obscene if its obscenity is latent, as in the case of undeveloped photographs. Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other especially susceptible audience if it appears from the character of the material or the circumstances of its dissemination to be especially designed for or directed to such an audience. In any prosecution for an offense under this section, evidence shall be admissible to show:

> (1) The character of the audience for which the material was designed or to which it was directed;

> (2) What the predominant appeal of the material would be for ordinary adults or a special audience, and what effect, if any, it would probably have on the behavior of such people;

> (3) Artistic, literary, scientific, educational or other merits of the material;

> (4) The degree of public acceptance of the material throughout the United States;

> (5) Appeal to prurient interest, or absence thereof, in advertising or to the promotion of the material.

Expert testimony and testimony of the author, creator or publisher relating to factors entering into the determination of the issue of obscenity shall be admissible."

G.S. 14-189.1 was enacted in 1957. Shortly thereafter, in *Roth v. United States,* 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498, the Supreme Court of the United States held that obscene material was not within the area of free speech and press protected by the First Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment. In that case the Supreme Court prescribed standards for determining obscenity which are essentially the same as those

embodied in our G.S. 14-189.1(b). (See 36 N.C.L. Rev. 189.) Those standards were later explained and amplified in *Memoirs,* wherein it is stated:

> "We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 US, at 489, 1 L. ed 2d at 1509. *Under this definition,* as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." Memoirs, 383 U.S., at 418, 16 L. Ed. 2d, at 6. (Emphasis added.)

Thus the Supreme Court has held that its definition of obscenity in *Roth,* which is essentially that of our definition in G.S. 14-189.1(b), includes the three elements set forth in *Memoirs.* Following this same logic, we hold that the definition of obscenity set forth in our statute includes these three elements. The trial judge interpreted the statute in this manner and the jury was instructed specifically that in order to find the material obscene they must find, beyond a reasonable doubt, the existence of all three of the essential tests. Construed in this manner, the constitutional objections raised here and before the federal court with respect to the omission in our statute of one test and the inadequate statement of another are removed.

The Supreme Court of Appeals of Virginia interpreted that State's similar obscenity statute to the same effect. *House v. Commonwealth,* 210 Va. 121, 169 S.E. 2d 572. A federal three-judge court thereafter concluded that the definition of obscenity adopted by the Virginia court "fully complies with the constitutional standards prescribed by the Supreme Court." *Grove Press, Inc. v. Evans, supra.* The following statement in the opinion of that federal court is particularly pertinent to the case at hand:

> "We are not persuaded by the plaintiffs' suggestion that only the legislature can amend the statutory definition of 'obscene.' For the purpose of testing the constitutionality of Virginia's statute, the interpretation by the Supreme

Court of Appeals is as definitive as if the statute had been amended by the legislature. See *Winters v. New York*, 333 U.S. 507, 514, 68 S. Ct. 665, 92 L. Ed. 840 (1948)."

[5] Defendant also attacks as unconstitutional subsection (f) of G.S. 14-189.1, which provides that a person who disseminates obscenity is presumed to know the existence of the parts, pictures or contents which render it obscene. If this were an absolute presumption of law we would agree that the provision would be unconstitutional. *Smith v. California*, 361 U.S. 147, 80 S. Ct. 215, 4 L. Ed. 2d 205. It is clearly not. We find, as did the trial judge, that the presumption raised by this proviso is simply evidentiary and to be considered by the jury along with other facts in evidence in determining whether the State has carried the burden of proof on the question of scienter.

This presumption is no different from the many presumptions that arise in various criminal cases. For instance: Possession of stolen property shortly after it is stolen raises a presumption of the possessor's guilt of the larceny of such property. *State v. Allison*, 265 N.C. 512, 144 S.E. 2d 578. Possession of a forged instrument raises the presumption that the possessor either forged it or consented to the forgery. *State v. Peterson*, 129 N.C. 556, 40 S.E. 9. Where a married woman has committed a criminal act in the presence of her husband, there is a presumption that she was acting under his influence or coercion. *State v. Cauley*, 244 N.C. 701, 94 S.E. 2d 915; *State v. Williams*, 65 N.C. 398. A person is presumed to intend the natural and normal consequences of his conduct. *State v. Wiggins*, 272 N.C. 147, 158 S.E. 2d 37. Presumptions arising from the use of a deadly weapon in committing a homicide are that the killing was unlawful and that it was done with malice, which constitutes murder in the second degree. *State v. Miller*, 197 N.C. 445, 149 S.E. 590; *State v. Floyd*, 226 N.C. 571, 39 S.E. 2d 598. If there be 0.10 percent or more alcohol in a person's blood, it shall be presumed that the person was under the influence of intoxicating liquor. G.S. 20-139.1.

The trial judge correctly charged the jury with respect to this presumption when he instructed:

"Now, this statute does provide in subsection 'F' that 'a person who unlawfully disseminates obscenity is presumed to know the existence of its parts, features, or contents of the material which render it obscene.' This statement from

the statute, however, is merely a presumption of fact. It is what we sometimes call in law *prima facie* evidence. And *prima facie* evidence is simply evidence which is sufficient to permit but not to compel a finding of the ultimate fact to be proved.

This presumption must be weighed by you, the jury, like any other evidence and considered along with all the other evidence in the case before you reach your verdict in this case.

In other words, this presumption of fact that I have read to you does not overcome the presumption that the defendant is innocent and it does not relieve the state of the burden of establishing his guilt of each and every element of this offense beyond a reasonable doubt, including the element of knowledge of the character of the material. . . ."

To hold this portion of the statute unconstitutional, in the light of the construction we have given to it, would be to cast doubt upon the constitutionality of the presumptions mentioned above, most of which are well established in the criminal laws of virtually every state in the Union. This we are unwilling to do.

Defendant assigns numerous errors based upon exceptions taken to various rulings on the admission of evidence. We find none of these assignments of error sufficiently prejudicial to warrant a new trial and they are therefore overruled.

We conclude that defendant received a fair trial, free from prejudicial error, and that he was convicted under a statute that is free from constitutional defect.

No error.

Judges BROCK and MORRIS concur.