**M. A. P., a juvenile, Petitioner,**

**v.**

**Honorable Joseph M. F. RYAN, Jr., Respondent.**

**No. 5939.**

District of Columbia Court of Appeals.

Argued Sept. 24, 1971.

Decided Dec. 29, 1971.

Carrie L. Fair, Public Defender Service, Washington, D. C., for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the answer, for respondent

Before HOOD, Chief Judge, and KELLY, and PAIR, Associate Judges.

HOOD, Chief Judge:

Petitioner, a juvenile of 17 years of age, was taken into custody by a police officer shortly after midnight and later in the same day taken to the Juvenile Branch of the Family Division of the Superior Court. There, on the basis of a complaint filed with the Intake Section, he was charged by sworn petition[1] with an offense which would constitute robbery if committed by an adult. Represented by counsel, petitioner denied the charge; the case was continued for trial; and petitioner was released on condition that he continue to live with his brother (presumably an adult) and that he seek employment.

Thereafter petitioner through counsel moved for "a probable cause hearing." His motion was denied and a motion for reconsideration was likewise denied. He then commenced in this court the present proceeding, a petition for writ of mandamus to compel the trial judge "to hold a probable cause hearing to determine if there is sufficient evidence to hold Petitioner for trial on the charge of robbery." The respondent trial judge, represented by the Corporation Counsel, filed an answer in opposition, and we heard oral argument.

In his petition and at oral argument petitioner relied heavily on the decision of the United States Court of Appeals for the District of Columbia Circuit in Brown v. Fauntleroy, 143 U.S.App.D.C. 116, 442 F. 2d 838 (decided February 26, 1971). There, under circumstances quite similar to the present case, it was held that the juvenile was entitled to demand and receive a probable cause hearing.[2] Our first question is to what extent we are bound by the ruling in *Brown*. Answer to this question requires consideration of some of this court's historical background.

By Act of Congress of April 1, 1942 (Pub.L.No. 77–512) the Police Court of the District of Columbia and the Municipal Court of the District of Columbia were consolidated into a single court known as "The Municipal Court for the District of Columbia".[3] The same Act created this court under the name of "The Municipal Court of Appeals for the District of Columbia"[4] as an intermediate appellate court to hear appeals from the newly created Municipal Court and from the Juvenile Court, with the provision that judgments of this court were subject to review by the United States Court of Appeals for the District of Columbia by petition for allowance of an appeal.[5]

In the ensuing years the civil jurisdiction of The Municipal Court was increased[6] and its name was changed to the District of Columbia Court of General Sessions.[7] The name of this court was changed to its pres-

---

1. "Judicial action" against a juvenile is instituted by the filing of a "petition". D.C.Code 1967, § 16–2305 (Supp. IV, 1971).

2. Prior to *Brown*, we reached the opposite conclusion in In re Taylor, D.C.App., 268 A.2d 522 (1970).

3. D.C. Code 1951, § 11–751.

4. *Id.*, § 11–771.

5. *Id.*, § 11–773.

6. Notably it was given exclusive jurisdiction in domestic relations cases (D.C. Code 1961, § 11–762) and its civil jurisdiction was increased to $10,000. This jurisdiction was taken from the United States District Court for the District of Columbia which served not only as a federal district court but also as a court of general jurisdiction for the District of Columbia.

7. Act of October 23, 1962, Pub.L. No. 87–873, 76 Stat. 1171.

ent name, the District of Columbia Court of Appeals.[8] The Court of General Sessions remained a court of limited jurisdiction and this court continued to be an intermediate appellate court.

On July 29, 1970 Congress enacted the District of Columbia Court Reform and Criminal Procedure Act of 1970.[9] This Act, effective February 1, 1971, consolidated the District of Columbia Court of General Sessions, the Juvenile Court of the District of Columbia, and the District of Columbia Tax Court into a single court named the Superior Court of the District of Columbia, with increased jurisdiction, both civil and criminal, with provisions for increases in jurisdiction at specified times until August 1, 1973, when the Superior Court will become a court of general civil and criminal jurisdiction for the District of Columbia.

With respect to this court, the Court Reform Act declared that "[t]he highest court of the District of Columbia is the District of Columbia Court of Appeals." The Act eliminated the power of the United States Court of Appeals to review judgments of this court and provided that "[f]inal judgments and decrees of the District of Columbia Court of Appeals are reviewable by the Supreme Court of the United States in accordance with section 1257 of title 28, United States Code."[10]

As this court on February 1, 1971 became the highest court of the District of Columbia, no longer subject to review by the United States Court of Appeals, we are not bound by the decisions of the United States Court of Appeals rendered after that date. With respect to decisions of the United States Court ofAppeals rendered prior to February 1, 1971, we recognize that they, like the decisions of this court, constitute the case law of the District of Columbia. As a matter of internal policy, we have adopted the rule that no division of this court[11] will overrule a prior decision of this court or refuse to follow a decision of the United States Court of Appeals rendered prior to February 1, 1971, and that such result can only be accomplished by this court en banc.

The decision of the United States Court of Appeals in Brown v. Fauntleroy, *supra*, was rendered after February 1, 1971, and thus this division of the court is not bound to follow *Brown* although, of course, we recognize that it is entitled to great respect.

It may be argued that regardless of the absence of power of the United States Court of Appeals to review judgments of this court, we are bound to follow *Brown* because it was decided on federal constitutional grounds by the federal circuit court of appeals for this jurisdiction. This argument has been advanced in various of the States, and a number of the highest state courts and at least one federal circuit court of appeals have rejected it, holding that state courts may exercise their own judgment on a federal constitutional question until that question is answered by the Supreme Court.[12] We think this is a sound view and adopt it. Although we are not the highest court of a State we are, for this purpose at least, analogous to one.[13]

---

8. *Id.*

9. Pub.L. No. 91–358.

10. D.C. Code 1967, § 11–102 (Supp. IV, 1971).

11. This court consists of nine judges who sit in divisions of three. D.C. Code 1967, §§ 11–702 and 11–705 (Supp. IV, 1971).

12. *See* United States ex rel. Lawrence v. Woods, 432 F.2d 1072 (7th Cir. 1970) and cases there cited. *See also* People v.

Stansberry, 47 Ill.2d 541, 268 N.E.2d 431 (1971); Iowa Nat. Bank v. Stewart, 214 Iowa 1229, 232 N.W. 445 (1930); Greene v. State, 11 Md.App. 106, 273 A.2d 830 (1971); State v. McCluney, 11 N.C.App. 11, 180 S.E.2d 419 (1971).

13. The overriding purpose which emerges from the Act [the Court Reform Act] is to put the District's judicial system on a par with those of the states. [Wright, J., in United States v. Thompson, D.C.

It may also be observed that the Court Reform Act unequivocally distributed the "judicial power in the District of Columbia" between the federal courts and the District of Columbia courts, allotting to each its own sphere and making neither subservient to the other.[14]

For the foregoing reasons we feel free to examine the holding in *Brown* and to either accept or reject it. After careful consideration, and with all respect due *Brown* and the court which rendered it, we have concluded that *Brown* was erroneously decided and should not be followed. We reached this conclusion for the following reasons.

### I.

■ In holding that the right to a probable cause hearing is a constitutional right, *Brown* relied heavily on Cooley v. Stone, 134 U.S.App.D.C. 317, 414 F.2d 1213 (1969), which quoted with approval the following from the District Court's oral ruling:

> No person can be lawfully held in penal custody by the state without a prompt judicial determination of probable cause. The Fourth Amendment so provides and this constitutional mandate applies to juveniles as well as adults.

No other authority was cited by *Brown* for the proposition that there is a constitu-

tional right to a probable cause hearing, and it was forced to explain away the previous holding in Clarke v. Huff, 73 App.D.C. 351, 119 F.2d 204 (1941) that "[t]here is no constitutional right to a preliminary hearing prior to indictment or prior to trial." We have looked elsewhere and find that the overwhelming weight of authority, both federal and state, is that there is no constitutional right to a probable cause hearing.[15]

Assuming that cases such as Goldsby v. United States, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343 (1895), Lem Woon v. Oregon, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1913), and United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501 (1935), have not settled the question, as some authorities think they have, we have examined with care Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the most recent case we have found where the Supreme Court considered the nature and purpose of a preliminary hearing. There it was held that such a hearing is a "critical stage" in a criminal prosecution and that at such hearing a defendant is constitutionally entitled to the assistance of counsel. We find nothing in the opinion of Justice Brennan, or the concurring opinions of Justices Black, Douglas, White and Harlan, or the dissenting opinions of the Chief Justice and Justice Stewart, even intimating that there is a constitutional right to a preliminary hear-

---

Cir., 452 F.2d 1333, at 1342 (decided October 7, 1971).]

14. D.C. Code 1967, § 11–101 (Supp. IV, 1971).

15. *See* Dillard v. Bomar, 342 F.2d 789 (6th Cir. 1965) and cases there cited. *See also* Ramirez v. Arizona, 437 F.2d 119 (9th Cir. 1971); Jackson v. Smith, 435 F.2d 1284 (5th Cir. 1971); Barber v. Arkansas, 429 F.2d 20 (8th Cir. 1970); Austin v. United States, 408 F.2d 808 (9th Cir. 1969); Sciortino v. Zampano, 385 F.2d 132 (2d Cir. 1967), cert. denied, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968); State v. Mazzadra, 28 Conn.Sup. 252, 258 A.2d 310 (1969); Smith v. O'Brien, 109 N.H. 317, 251 A.2d 323 (1969); State v. Smith, 32 N.J. 501, 161 A.2d 520 (1959); Com-

monwealth v. O'Brien, 181 Pa.Super. 382, 124 A.2d 666 (1956); State ex rel. Leighton v. Henderson, 448 S.W.2d 82 (Tenn.Cr.App.1969); State v. Ollison, 68 Wash.2d 65, 411 P.2d 419, cert. denied, Wallace v. Washington, 385 U.S. 874, 7 S.Ct. 149, 17 L.Ed.2d 101 (1966). It may be noted that Judge Tamm, one of the two judges who participated in Cooley v. Stone, also participated in Brown v. Fauntleroy but could find no "constitutional, *statutory, case law, or procedural rules requiring* prompt probable cause hearings for non-detained juveniles," (n. 1 to concurring op., 442 F.2d at 843). It should also be noted that *Brown* has been cited with approval by a federal district court. *See* Pugh v. Rainwater, 332 F.Supp. 1107 (S.D. Fla.1971).

ing. We do find intimations to the contrary. For example, Justice Brennan points out that in Alabama a preliminary hearing is not a required step in a prosecution, and that a prosecutor may seek an indictment directly from the grand jury without a preliminary hearing. 399 U.S. at 7–8, 90 S.Ct. 1999. Justice White refers to "jurisdictions" where the prosecutor is free to avoid preliminary hearings by taking cases directly to the grand jury. 399 U.S. at 17–18, 90 S.Ct. 1999. Neither Justice suggests that such procedure would deprive a defendant of a constitutional right. And the Chief Justice states that the purpose of a preliminary hearing either under Alabama law or the federal system is the same. 399 U.S. at 24, 90 S.Ct. 1999. It seems to us that if any of the Justices felt there was a constitutional right to a preliminary hearing there would have been some suggestion to that effect.

## II.

*Brown* states that the fourth amendment "applies to everyone arrested for conduct defined as a crime and for which he remains subject to answer to the law. It is the arrest, not simply continued detention, to which the Amendment attaches." 442 F. 2d at 841. That sweeping language, read in context with the entire opinion, implies that any person arrested and charged with a crime, felony or misdemeanor, is entitled to a preliminary hearing, regardless of whether he has been charged by indictment for a felony or by information for a misdemeanor.[16] If that is the holding, we disagree.

In Sciortino v. Zampano, 385 F.2d 132, 133 (2d Cir. 1967), cert. denied, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968), it was said:

There is extensive authority in the cases for the proposition that the return of an indictment, which establishes probable cause, eliminates the need for a preliminary examination.

For that proposition the court cited Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), and cases from the 2d, 3d, 4th, 6th, 8th and 9th Circuits. This has been the accepted rule for many years.[17]

■ We have also found it to be the rule that where one is charged by information filed by the proper prosecuting authority, which is the long established practice in this jurisdiction and apparently elsewhere also, in misdemeanor cases, there is no right to a preliminary hearing.[18] This rule appears to be based on the same reasoning applied to cases of indictments. A properly filed information like an indictment establishes probable cause. The Federal Rules of Criminal Procedure do not require preliminary examination as a condition precedent to prosecution by information. United States v. Pickard, 207 F.2d 472 (9th Cir. 1953). See also 18 U.S.C. 3060(e). The rule is the same in the States. See State v. Ollison, 68 Wash.2d 65, 411 P.2d 419, cert. denied, 385 U.S. 874, 7 S.Ct. 149, 17 L.Ed.2d 101 (1966). Some state statutes expressly eliminate the necessity for a preliminary hearing in misdemeanor cases.[19] The Su-

16. Perhaps we state the implication too broadly, but *Brown* was unwilling to concede that an indictment obviates the need for a preliminary hearing for it said: "We are not presently concerned with whether an indictment by a grand jury obviates the need for or is a substitute for a probable cause hearing." 442 F.2d at 840.

17. *See, e. g.,* United States v. Fitzgerald, 29 F.2d 573 (E.D.Pa.1928); United States v. Gray, 87 F.Supp. 436 (D.D.C.

1949, Holtzoff, J.); Yodock v. United States, 97 F.Supp. 307 (M.D.Pa.1951).

18. Rivera v. Gov't of Virgin Islands, 375 F.2d 988 (3d Cir. 1967); United States v. Funk, 412 F.2d 452 (8th Cir. 1969).

19. *See, e. g.,* People v. Caldwell, 54 Misc. 2d 674, 283 N.Y.S.2d 273 (1967); Clark v. Texas, (Tex.Cr.App.) 417 S.W.2d 402 (1967); State v. Watkins, 40 Wis.2d 398, 162 N.W.2d 48 (1968).

preme Court found nothing constitutionally wrong with the Oregon system which did not require that an information be preceded by a preliminary examination. Lem Woon v. Oregon, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1913).

In the case before us petitioner was not charged by indictment or information because a juvenile is not charged as a criminal, but petitioner was charged by a verified petition filed under D.C.Code 1967, § 16–2305 (Supp. IV, 1971) which requires that the petition be prepared by the Corporation Council "after an inquiry into the facts and a determination of the legal basis for the petition." By analogy to the return of an indictment or the filing of an information, the filing of the petition by the authorized prosecuting authority eliminates the necessity of a preliminary hearing.

We have some difficulty with *Brown's* emphasis on a defendant's "right to have the validity of the seizure"[20] determined at the preliminary hearing. We had thought that the purpose of a preliminary hearing is to determine whether there *is* probable cause to hold the accused and not whether there *was* cause to arrest him. Often the evidence is the same but it is not hard to visualize a situation where additional evidence is discovered after the arrest but before the hearing. If there is probable cause to hold a defendant, we do not think he should be discharged because he was arrested without probable cause. Motions to suppress evidence, because seized as the product of an arrest without probable cause, are frequently made and granted but a finding of arrest without probable cause does not automatically as a matter of law end the case

and entitle the defendant to be freed. From a practical viewpoint, suppression of seized evidence may result in the prosecutor dropping the case because without the evidence there is no case, but if there is additional evidence the prosecution may proceed. In other words, lack of probable cause for arrest does not legally bar prosecution. As the Chief Justice pointed out in Coleman v. Alabama, *supra*, a discharge at a preliminary hearing "is no bar to a later indictment." 399 U.S. at 24, 90 S.Ct. at 2011.

It is our understanding that when a defendant is brought to trial, the validity or invalidity of his original arrest, aside from the question of suppression of evidence, is immaterial.[21] In summary we do not agree with *Brown's* implication that anyone who has been arrested has the right under any and all circumstances to have the validity of his arrest determined.

### III.

The Supreme Court has held that juvenile proceedings "must measure up to the essentials of due process and fair treatment"[22] and that to measure up to that standard a juvenile must be afforded certain fundamental rights such as timely notice of the specific charges against him, the right to counsel, the right to confrontation and cross-examination, and the privilege against self-incrimination.[23] In In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) it was held that the due process safeguards required by *Gault* included proof beyond a reasonable doubt of a charge against a juvenile of conduct which, if committed by an adult, would constitute a crime. However, the Court did not hold that all rules applicable in criminal

20. 442 F.2d at 842.

21. *See* Commonwealth v. Gorman, 288 Mass. 294, 192 N.E. 618, 96 A.L.R. 977 (1934). *See also* District of Columbia v. Jordan, D.C.App., 232 A.2d 298 (1967); Collins v. Swenson, 443 F.2d 329 (8th Cir. 1971); DeWease, Jr. v. Cox, 327 F.Supp. 652 (W.D.Va.1971).

22. Kent v. United States, 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966).

23. Application of *Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

prosecutions are equally applicable in a juvenile delinquency proceeding.

In McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) [24] the Court stated that it had not in its previous decisions held that *"all* rights constitutionally assured to an adult accused of crime also are to be enfored or made available to the juvenile in his delinquency proceeding." 403 U.S. at 533, 91 S.Ct. at 1980. It further said that all parties before it in *McKeiver* agreed that "the applicable due process standard in juvenile proceedings, as developed by *Gault* and *Winship,* is fundamental fairness." The Court concluded that such standard did not include the right to trial by jury in a delinquency proceeding.

We turn to the provisions of the Court Reform Act regulating procedure in juvenile delinquency proceedings to determine if such provisions violate fundamental fairness.[25] The Act provides that a child alleged to be delinquent is entitled to be represented by counsel, with provision for appointment of counsel for one financially unable to obtain adequate representation; [26] that a complaint alleging delinquency shall be referred to the Director of Social Services who shall conduct a preliminary inquiry to determine whether the best interests of the child or the public require a petition to be filed, and if judicial action appears warranted under intake criteria, the Director shall recommend that a petition be filed.[27]

A petition initiating judicial action may be signed by any person having knowledge of the facts alleged or, being informed of them, believes they are true. Petitions must be verified and may be verified upon information and belief.[28]

A petition is prepared by the Corporation Counsel "after an inquiry into the facts and a determination of the legal basis for the petition." [29] In delinquency cases the petition must state the specific statute or ordinance on which the charge is based.[30]

Coming to the provisions controlling the situation before us, it is provided that the initial appearance before a judge shall be not later than 5 days after the filing of the petition, at which time the child and his parent, guardian or custodian shall be advised of the contents of the petition and of the right to counsel. At the hearing the child may admit or deny the allegations of the petition, "but it shall not be necessary at the initial appearance for the Corporation Counsel to establish probable cause to believe that the allegations in the petition are true." [31] At the initial hearing the judge may set the time for the fact-finding hearing (trial) or continue the matter to a later date.

A child shall not be placed in detention prior to a fact-finding hearing or dispositional hearing unless alleged to be delinquent *and* unless it appears from available information that detention is required (1) to protect the person or property of others or of the child, or (2) to secure the child's presence at the next court hearing.[32]

If the judge finds that a child's detention is required, he shall then hear evidence presented by the Corporation Counsel "to determine whether there is probable cause to believe the allegations in the petition are

24. *McKeiver* was decided several months after the decision in *Brown.*

25. The present law differs in numerous respects from the law existing at the time Brown was taken into court.

26. D.C. Code 1967, § 16-2304(a) (Supp. IV, 1971).

27. *Id.,* § 16-2305(a).

28. *Id.,* § 16-2305(b).

29. *Id.,* § 16-2305(c).

30. *Id.,* § 16-2305(d).

31. *Id.,* § 16-2308.

32. *Id.,* § 16-2310.

true." [33] The child, his parent, guardian or custodian may present evidence in their behalf. If probable cause is found the child is ordered to be placed or continued in detention, and the judge is required to set forth his reasons therefor in writing. If probable cause is not found, the child is released.[34]

Does the fact that no probable cause hearing is required when, as here, the juvenile is not ordered detained, violate the standard of fundamental fairness? We think not. We find nothing fundamentally unfair in a system which requires that a complaint alleging delinquency be subjected to an inquiry in the Intake Section before a recommendation is made that a petition be filed against the juvenile, and that upon such recommendation a petition may not be filed until further inquiry is made by the Corporation Counsel into the facts and law. This, it appears to us, is a fair procedure designed to prevent, by reasonable precautions, the filing of an unfounded petition against the juvenile.

In view of the precautionary measures required before the filing of the petition, we find nothing fundamentally unfair in not affording the juvenile the right to a probable cause hearing when the juvenile is not detained prior to the trial.

For the reasons set forth above the petition for writ of mandamus is denied.

33. *Id.,* § 16–2312(e).

34. *Id.,* § 16–2312(f).