In re IRA WILLIAMS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. IRA WILLIAMS, Respondent-Appellant.)

First District (2nd Division) No. 60797

Opinion filed March 12, 1976.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Eugene J. Rudnik, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from an order that adjudged a minor a delinquent, made him a ward of the court, and committed him to the Juvenile Division of the Department of Corrections. Four issues are presented for our review. 1. Whether the trial court erred in denying the minor's motion to quash his arrest and suppress evidence. 2. Whether the trial court erred in proceeding with the adjudicatory hearing when the minor's mother was not present and the court did not appoint a guardian ad litem. 3. Whether the court erred in admitting hearsay testimony

into evidence. 4. Whether the court erred in holding a dispositional hearing without securing a written report from the probation department. These issues are raised from the following facts.

On December 11, 1972, at about 11 a.m., Charles R. Turner, an off-duty Chicago policeman with more than 17 years experience, was returning to his home from a doctor's office. It was a school day; and the weather was five degrees below zero. As he approached the corner of East 94th Street and South Rhodes in Chicago, he saw a youth walking back and forth from an alley to the corner. Turner watched for about 30 minutes. Within that time, he saw the young man make motions with his hands, and another youth joined him. The two then proceeded to walk west on 94th Street in the direction of Turner's parked car to King Drive. Turner allowed the youths to pass him and then followed them. While doing so, he noticed that the second of the two youths was holding a small black transistor-type radio. Turner followed them until they reached an elementary school in the middle of the block where they were met by three other youths. Two of the latter were carrying television sets; one, later identified as respondent Ira Williams, was carrying a movie projector. Just at that moment, a Chicago police squad car approached. The youths ran behind some hedges and then into a gangway. Turner signaled to the officer in the squad car; and after the two conversed briefly, the youths came out of the gangway and walked westbound on East 94th Street. The two officers stopped three of them. Two of the youths ran. The other three were asked by the officers about the property they were carrying. Then, they were arrested, searched and advised of their constitutional rights. Later investigation revealed that a nearby apartment had been burglarized. The owner, George Moore, identified the two television sets the other youths were carrying, and the movie projector found in respondent's possession as property taken from his home. Based on this occurrence, in a count added to a petition for adjudication of wardship, respondent was charged with burglary in that, without authority, he knowingly entered the home of George Moore with intent to commit theft therein.

At the hearing of the petition less than a month later, respondent's mother was not able to be present because she had to work. In her place, she sent her 19-year-old son. When the court proceeded to hear the case, respondent's counsel twice moved to suppress the State's evidence on the ground that his client's arrest on the morning of December 8, 1972, was without probable cause. The motions were denied. Thereafter, the court admitted the testimony of the officers and then held a dispositional hearing in which a probation officer supplemented an earlier report that had been filed with the court. Respondent was found

to be a delinquent and he was committed to the Juvenile Division of the Department of Corrections.

With regard to respondent's motions to suppress evidence, we notice that they were oral, made during hearing of the petition, and while Officer Turner was testifying for the prosecution. No effort was made to determine exactly when respondent was arrested and when he was searched. Nonetheless, it appears from the record that on the morning in question Officer Turner, a veteran Chicago policeman, off duty and on his way home from a doctor's office, saw a youth at the Chicago intersection of East 94th Street and South Rhodes Avenue at about 11 a.m. We take judicial notice that the location of this intersection is a densely populated residential area in the southeast side of Chicago. It was a school day; it was school time, when Officer Turner saw the youth; and the record suggests he was of school age. Of course, these facts, standing alone, would not have justified Officer Turner in stopping, detaining or searching the youth. See *In re Woods*, 20 Ill. App. 3d 641, 314 N.E.2d 606.

However, after observing the youth for about half an hour, Officer Turner saw a second youth; and a short time later, three others joined the two, one of whom was the respondent. Two of the latter three boys were carrying two television sets, and respondent had a movie projector in his possession.

■■ It is our judgment that under the circumstances disclosed to Officer Turner and his fellow officer, men of reasonable caution would have believed that the youths had committed an offense involving the items of personal property they were carrying. (See *People v. Mc-Crimmon*, 37 Ill. 2d 40, 43, 224 N.E.2d 822; compare *In re Marsh*, 40 Ill. 2d 53, 237 N.E.2d 529.) In this State a peace officer may arrest an individual without a warrant when he has reasonable grounds to believe that that person is committing or has committed an offense. (Ill. Rev. Stat. 1971, ch. 38, par. 107—2.) In addition, our criminal code provides that a peace officer may stop a person for a reasonable period of time when that officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense. (Ill. Rev. Stat. 1971, ch. 38, par. 107—14.) We conclude from the evidence in this case that there was probable cause for respondent's arrest by Officer Turner and his fellow officer. Therefore, the trial court did not err in denying respondent's motions to suppress. See *People v. Robinson*, 62 Ill. 2d 273, 342 N.E.2d 356; compare *M.A.P. v. Ryan* (D. C. App. 1971), 285 A.2d 310.

The next issue arises from respondent's contention that the trial court erred in proceeding with the adjudicatory hearing when his mother was

not present and no guardian ad litem was appointed. Respondent rests his argument first on section 1—20 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 701—20) which provides:

> "[T]he minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel."

■■ Under this section, a minor's mother, one who by law is a party respondent, has the right to be present, to be heard, to present evidence, to cross-examine witnesses and to examine pertinent court files in a juvenile proceeding involving her child. However, this section does not make it mandatory that the mother be present. Prior to the beginning of the adjudicatory hearing, the probation officer stated that respondent's mother was aware of the court date and of the fact that an adjudicatory hearing would take place. However, he told the court she chose voluntarily to absent herself from the hearing, sending her 19-year-old son in her stead. The trial judge was not obligated to wait until the respondent's mother chose to appear. Therefore, we conclude that the court properly proceeded with the adjudicatory hearing after respondent's mother voluntarily absented herself.

Respondent also argues that the trial judge erred in proceeding without first appointing a guardian ad litem. The Juvenile Court Act provides that before proceeding with an adjudicatory hearing, the trial court shall appoint a guardian ad litem for the minor if "no parent, guardian, custodian or relative of the minor appears at the first or any subsequent hearing of the case." (Ill. Rev. Stat. 1973, ch. 37, par. 704—5.) Here, respondent's mother was made aware of the hearing and voluntarily chose not to appear. In her stead she sent her 19-year-old son as the family representative. The son was present at the entire hearing at which respondent was represented by counsel. Respondent's probation officer was present at the adjudicatory hearing and respondent's mother arrived during the latter half of the proceedings. Under these circumstances, we believe that the minor-respondent's rights were fully protected.

The third issue is whether the trial judge improperly admitted hearsay testimony into evidence. First, the respondent complains that George Moore testified as to the time his wife and his children had left the home when he was not present in the house when they left. Defense counsel objected to this testimony, but the trial judge overruled the objection

stating that he recognized the testimony was hearsay but did not believe it to be prejudicial. Moore testified that he left the home at 6 a.m. and that he did not give the respondent permission to enter or remain in his home. The fact that other family members may have departed from the premises at varying times after Moore left was totally irrelevant in determining whether Moore gave the respondent permission to enter or remain in his home. Respondent, when he testified, did not assert he had permission from anyone to enter the Moore apartment.

■■ Next, complaint is made that Turner's fellow officer, asked why he and Officer Turner went to Moore's home, answered:

> "A: After the boys had been placed in the squadrol they had been removed to the area of Ninety-third and Rhodes—I don't know it would be hearsay.

> THE COURT: Let us determine that. You just respond to the question; what made you determine—

> OFFICER DEMITRICO: I guessed—one of the boys had stated to one of the squadrol drivers or Officer Turner that he knew where the burglary had occurred."

The record reflects that the officer's answer was given during cross-examination and that defense counsel did not at any time object. The rule is well established that where no objection is made to improper testimony at trial, a defendant cannot, on appeal, argue that the testimony was improperly admitted into evidence. *People v. McMurray*, 6 Ill. App. 3d 129, 285 N.E.2d 242.

■■ Moreover, a judge who hears a case as a bench trial is presumed to recognize incompetent evidence and disregard it. (*People v. Bey*, 51 Ill. 2d 262, 281 N.E.2d 638.) The trial judge here, in overruling defense counsel's objections, demonstrated that he recognized the testimony as hearsay but did not believe it to be prejudicial. There is nothing in the record to indicate that the trial judge considered the incompetent hearsay testimony in arriving at his determination that respondent was a delinquent. Consequently, he was not prejudiced in any way.

The last issue is raised by respondent's contention that the trial court erred in holding a dispositional hearing without securing a written report from the Probation Department as required by statute. Section 5—1 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—1) provides:

> "After adjudging the minor a ward of the court, the court shall hear evidence on the question of the proper disposition best serving the interests of the minor and the public. All evidence helpful in determining this question, including oral and written

reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing. No order of commitment to the Department of Corrections shall be entered against a minor before a written report of social investigation, which has been completed within the previous 60 days, is presented to and considered by the court."

At the dispositional hearing, the probation officer was present and gave an oral report to the court. The State argues that the oral report given by the probation officer was sufficient to comply with the statute. We need not consider the State's argument because it has come to our attention that respondent was released on parole in December 1973. Since the sole sanction that could be applied on a finding that section 5—1 has been violated would be a remandment of the cause for consideration of a written report before the entry of an order of commitment, this issue is now moot. See *In re Littlejohn*, 24 Ill.App.3d 40, 320 N.E.2d 449.

■■ In support of his position on the same issue, respondent also argues that the trial judge erred in failing to state the basis for selecting his particular disposition, as required by section 5—1(5) of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—1(5)). The record shows that the trial court's order contains a statement wherein the judge filled in and circled various items on a preprinted form stating that Caroline Williams, respondent's mother, was unable to care for, protect, train and discipline respondent, and he was therefore being committed to the Department of Corrections. The fact that this was done on a preprinted form does not in any way dilute its validity. The trial judge's order was sufficient to comply with the statute. Accordingly, the order is affirmed.

Affirmed.[1]

STAMOS, P. J., and DOWNING, J., concur.

---

[1] This opinion is published to give the reasons for our judgment of affirmance entered Thursday, February 26, 1976. In our order of that day, we provided that in the event a petition for rehearing is filed, the time required by Supreme Court Rule 367(a) will be computed from March 12, 1976. In the event no petition for rehearing is filed in this court, the time for petition for leave to appeal as provided by Supreme Court Rule 315(b) will be 56 days from March 12, 1976.