Concurring opinion by Chief Judge WASHINGTON.
Concurring opinion by Associate Judge FISHER.
WASHINGTON, Chief Judge,
concurring:
As the majority opinion points out, this court in Smith v. United States, 777 A.2d 801, 810 n. 15 (D.C.2001) approved of a jury instruction which defines an imitation firearm as “any object that resembles an actual pistol closely enough that a person observing it in the circumstances would reasonably believe it to be a pistol.” Based on that decision, this panel has concluded that the trial court in this case did not err in instructing the jury that under the circumstances of this case a cell phone could be considered an “imitation firearm.” I write separately because I believe the Smith court’s discussion in footnote 15 im-permissibly expanded the definition of “imitation firearm” beyond its plain and ordinary meaning.
The trial court’s initial instruction to the jury mirrored the language contained in the indictment for both the PFCV and the ADW offenses and required the jury to find that appellant used “a dangerous *331 weapon; that is a firearm or imitation thereof’ during the commission of his crimes in order to be convicted for those offenses. However, based on evidence adduced at trial indicating that the object in appellant’s hand might have been a cell phone, as opposed to a firearm, the jury asked the court to clarify the definition of “imitation firearm.” After discussing the note from the jury with both counsel, the trial court originally responded by merely reinstructing the jury as it had originally and without further defining “imitation firearm.” However, the next morning, at the urging of the government and despite the fact that the court had not received any further communications from the jury, the trial court supplemented its earlier instruction with the definition from the opinion in Smith as outlined above. While the instruction was not erroneous pursuant to this court’s precedent, I find this court’s continued reliance on Smith and its musings about how our case law could be read to support a correlation between the definition of a “dangerous weapon” and that of an “imitation firearm,” to be inappropriate considering the Smith court merely concluded that the evidence in the case was sufficient to support the jury’s verdict that Smith had committed a robbery “while armed,” and did not specifically address the use of objects such as the one at issue in this case.
The question before this court in Smith was whether “the act of putting one’s hand in their pocket and uttering the'words ‘stay back or I’ll shoot’ during the course” of a robbery satisfied the while armed component of a robbery offense. Smith, 111 A.2d at 809. Smith contended'that the evidence was insufficient because the only thing that was in his pocket at the time of the robbery was his hand. This - court affirmed his conviction stating:
[O]ur decision in this case does not necessarily implicate Smith’s characterization of the imitation firearm. The jury, after hearing all of the evidence, could have reasonably believed that Smith’s hand was accessing an imitation firearm in his pocket rather than actually making an imitation firearm. In any event, we simply hold that there was sufficient evidence for a jury to have found that Smith committed the robbery while armed ...
Id. at 810 n. 15. However, by affirming the trial court’s instruction in this case, we continue to endorse the Smith court’s musings and improper expansion of the definition of imitation firearm by importing definitions developed in cases where the instrumentalities used to commit the crime were defined by reference to the surrounding circumstances. I believe that the analysis contained in footnote 15 of Smith improperly expanded the definition of “imitation firearm” by suggesting that jurors can be instructed to consider factors more properly confined.to determining whether something that is not inherently dangerous, unlike a firearm or imitation firearm, is being used as a dangerous weapon and thus the instruction in this case was overly broad.
In Webster’s New Collegiate Dictionary the word “imitate” is defined in the following pertinent ways: “To duplicate-exactly,” “to appear like,” and “to resemble.” Webster’s II New Collegiate Dictionary 552 (1999). Black’s Law Dictionary defines the word “imitation,” albeit in the trademark context, as “[a]n item that so resembles a[n] ... item as to be likely to induce the belief that it is genuine.” Imitation, Blaoic’s Law Dictionary- (10th ed.2014). Applying those definitions here, an imitation firearm would be one that so resembles an actual firearm as to be likely to induce belief that it is a genuine firearm. In other words, a plain reading of the *332 statute requires an imitation firearm to look like the real thing.
A plain reading of the statute also supports the idea that the term “imitation firearm” is meant to be given its plain meaning. Congress never explicitly defines “imitation” in'the criminal code but consistently uses the term. For example, here, appellant was also convicted under the possession of a firearm during a crime of violence (“PFCV”) statute, which criminalizes the possession of an “imitation firearm” during a crime of violence. Specifically, the statute reads:
No person shall within the District of Columbia possess a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime ás defined in § 22-4501.“ Upon conviction of a violation of this subsection, the person may be sentenced to imprisonment for a term not to exceed 15 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 5 years and shall not be released on parole,' or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence.
D.C.Code § 22 — 4504(b) (emphasis added).
The maxim of noseitur a sociis dictates that “a word is known by the company it keeps” and is “applied where a word is capable of many meanings in -order to avoid the giving of unintended breadth to the Acts of Congress.” Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961). Thus, that doctrine suggests that an “imitation firearm” would be one that physically resembles a firearm of the kind listed in the statute. The doctrine of ejusdem generis leads to the. same conclusion: “[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the .preceding specific words.” Edwards v. United States, 583 A.2d 661, 664 (D.C.1990) (citation omitted).
However, the question remains whether or not an imitation firearm depends upon the victim’s reasonable belief of what the object looks like under the circumstances, which is what the trial court in this case instructed to the jury. A review of the legislative history of the while-armed statute provides some guidance. In 1970, imitation firearms were added to the list of weapons included in the while-armed statute in response to the difficulty the government was having in proving that the gun used by a defendant was real, operable, and loaded at the time of the crime. H.R.Rep. No. 91-907, at 68 (1970). The inclusion of the phrase “imitation thereof’ was intended to subsume any unrecovered gun within the category of weapons considered dangerous or deadly. Id.
• The committee gave some examples of “imitation” dangerous or deadly weapons, including blank or toy pistols, antique rifles, and inoperable shotguns, which are all specifically replica weapons. It does not appear that the committee ever considered whether the brandishing of random objects to strike fear in a victim during the commission of a crime would also qualify as an “imitation” firearm. What appear to be the critical considerations, rather than a victim’s fear, are the characteristics of the object itself and whether it actually resembles a firearm to those viewing it.
This definition of “imitation firearm” is also consistent with how the term has been interpreted by many other jurisdictions. For example, the Virginia criminal code makes it “unlawful for any person to- point, hold, or brandish” “any object similar in appearance” to any firearm. Va.Code Ann. § 18.2-282 (2016). Other states have more specifically defined .“imitation firearm” as *333 replicas of actual firearms. For example, in Arkansas, the state defines “imitation firearm” as “a toy that is identical in appearance to an original firearm that was manufactured, designed, and produced after 1898, including only: air-soft guns firing nonmetallic projectiles, replica non-guns; and water guns.” Ark.Code Ann. § 20-27-2301(a) (2015).[1] In California, “imitation firearm” is defined as “any BB device, toy gun, replica of a firearm, or other device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm.” Cal.Penal Code § 16700(a) (2016). In New Jersey, “[limitation firearm means an object or device reasonably capable of being mistaken for a .firearm,” N.J. Stat: Ann. § 2C:39-1 (v) (2015), and in Tennessee it means “an object or device substantially similar in coloration and overall appearance to a firearm as to lead a reasonable person to perceive that the object or device is a firearm.” Tenn.Code Ann. § 39-17-1362(1) (2015). In each jurisdiction, “imitation firearm” depends on what the item objectively looks like, not what it appears to look like to a person under any particular circumstance.
Had Congress intended that the District include objects that did not closely resenu ble real firearms as “imitation firearms,” it could have stated so. It did not. 1 Pursuant to the legislative intent of the term, an imitation firearm must physically conform to the characteristics commonly attributable to a real firearm. 'Moreover,- this showing cannot be met simply by a victim’s subjective perception .that an object appears to be dangerous or looks like a firearm, where the characteristics of the object do not resemble one to an objective observer.
I believe that the trial court’s response to, the jury’s note that an imitation firearm can be any object that appears to be a firearm to the victim under the circumstances was overly broad and that regardless of the subjective belief of the. person in the circumstances, there must be some evidence that the defendant had possession of a firearm or replica firearm, But for our obligation under M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C.1971), I would have dissented, however this is an issue that should be addressed en banc.

. An "imitation firearm" in Arkansas, however, does not include a traditional BB, paintball, or pellet-firing air gun that expels a projectile through the force of air pressure, among other things. Id. at (b)(2).