**People of the State of Illinois, Plaintiff-Appellant, v. Sylvester Biocic, Defendant-Appellee.**

**Gen. No. 50,988.**

First District, Second Division.
February 23, 1967.
Rehearing denied March 22, 1967.

Daniel P. Ward, State's Attorney of Cook County, of
Chicago (Elmer C. Kissane, Kenneth L. Gillis and James

B. Zagel, Assistant State's Attorneys, of counsel), for appellant.

George J. Cotsirilos, of Chicago, and Stanley Fleishman, of Hollywood, California, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was indicted for the crime of obscenity under two indictments charging him with the sale of two nudist magazines. The trial judge found that the magazines were not obscene as a matter of law and that they were entitled to the protection afforded by the First Amendment of the United States Constitution. Both indictments were dismissed on motion of defendant. The People appealed under Supreme Court Rule 17(4) then in effect.

One indictment charged that defendant "committed the offense of obscenity, in that he, with knowledge of the nature or content thereof, sold an obscene book, to wit: utopia (sic) Issue Number 2, to Stratford Peterson, in violation of chapter 38, section 11–20, of the Illinois Revised Statutes 1963, . . ." Another indictment was identically worded, except that it described the magazine sold as "Nudist Colorama Number 3."

Nudist Colorama is an 80-page magazine containing 117 color photographs of nude persons of both sexes, young and old. The magazine is described as a "cultural and sociological publication, produced and distributed to illuminate the conviction that the unclothed human body is worthy of respect and increased acceptance in our culture." Utopia is a 64-page magazine containing 56 photographs of male and female nudes, young and old. Fifteen of the photographs are in color and the balance are black-and-white prints. The stated purpose of the magazine is similar to that of Nudist Colorama.

Both magazines contain photographs of nude men, women and children engaged in nudist living. Some photographs show the genitalia of the nudes completely exposed. In some instances the photographs depict the nudes posed in such a manner as to accentuate the private parts of the body. Other photographs show groups of persons, some of whom are completely nude and others partially or fully clothed in street attire. Throughout the magazines are numerous articles and commentaries relating to the various activities engaged in by nudes and relating to the glorification, principles and philosophy of nudist living. The Utopia magazine contains nine articles dealing with various aspects of and benefits allegedly derived from nudist living. On the inside cover of the magazine is a short editorial describing nudism and its relationship to "ultimate humanness and human happiness." Nudist Colorama contains eight articles on nudist or naturist living which discuss its alleged advantages. Interspersed throughout the publication are reproductions of classical art protraying nudes. An article in one of the magazines expounds the theory that nudism should be practiced on a family basis rather than on an individual level.

The trial court found that the magazines were sold by defendant to Chicago Police Officer Stratford Peterson at defendant's place of business, an off-the-street arcade in the 400 block of South State Street in Chicago. It was further found that the magazines were displayed among other "nudist and girlie-type magazines," that the defendant's shop contained numerous bookracks from which books of a "nudist and girlie-type" nature were sold, and that defendant exhibited movies of nude women in the arcade. The trial court took judicial notice of the fact that defendant's arcade is located in an area containing department stores of nationwide reputation and places of entertainment ranging from cheap restaurants

to burlesque theaters frequented by service men on leave and adults of all ages for entertainment and recreation.

The People first maintain that the trial judge erred as a matter of fact in determining that the publications involved herein were not obscene. We disagree.

 Obscenity is not entitled to the protection afforded by the First Amendment to the United States Constitution. Roth v. United States, 354 US 476. Whether a given publication is obscene or whether it is entitled to the protection of the First Amendment is a question of law which must, in the first instance, be determined by a court. It is only when such determination has been made in the affirmative that the trier of fact may be called upon to decide whether the publication is in fact obscene. Parmelee v. United States, 113 F2d 729, 731. The test upon which such determination must be based is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." Roth v. United States, 354 US 476, 489. A publication is obscene if, considered as a whole, its predominant appeal is to a shameful or morbid interest in nudity, sex or excretion and if it goes beyond the customary limits of candor in description or representation of such matters. Jacobellis v. Ohio, 378 US 184, 191.

The section of the Criminal Code of 1961, under which the two indictments were brought defines "obscenity" in the same language as the test for obscenity declared in the Roth case; it is therefore clear that the test of obscenity under the Criminal Code is the same as that declared in the Roth case. See People v. Sikora, 32 Ill 2d 260, 204 NE2d 768; Roth v. United States, 345 US 476; Ill Rev Stats 1965, c 38, par 11–20.

 No attempt is made in the magazines to portray sex in a morbid or shameful manner. The nudity is

frank and revealing. The material, including the photographs, cannot be said to be "dirty" or "lewd," nor can it be said to appeal to the prurient interest. Nudity without lewdness is not obscene. See Parmelee v. United States, 113 F2d 729; Matter of Excelsior Pictures Corp. v. Regents of the University of New York, 3 NY2d 237, 165 NYS2d 42.

■ As stated by the trial judge, the photographs in the magazines range "from the beautiful to the vulgar by any esthetic standard." Some of the photographs portray nudes, of both sexes and of all ages, in deliberately posed positions, much as a fully clothed person would pose for an ordinary photograph. Other photographs depict nudes engaged in normal activity and entertainment, such as swimming, volley ball, tennis, boating, lounging, in which any clothed person would normally engage. Some photographs are of family units, some of individuals, and some of large and small groups. A number of photographs depict persons entirely nude and others show persons both nude and partially or fully clothed in street attire. No attempt is made to be suggestive or seductive. Considered as a whole, each magazine is dedicated to depicting and expounding through photographs and articles the virtues of nudist living and to advancing the theory that nudism has a place in our culture. It cannot be said that the magazines are totally without any socially redeeming characteristics. Roth v. United States, 354 US 476; Chicago v. Universal Publishing & Distributing Corp., 34 Ill2d 250, 215 NE2d 251.

■ The People next contend that the trial judge committed error by taking judicial notice of the nature of the South State Street area where defendant's arcade is located, for the reason that it was an opinion based upon the judge's personal knowledge. The trial court had a right to take judicial notice of the nature of the area. A court may take judicial notice of whatever may

be known by common observation; courts are presumed to be as well informed as the public generally and may take judicial notice of that which everyone knows to be true. Chicago & Alton R. Co. v. Joliet, L. & A. R. Co., 105 Ill 388; Owens v. Green, 400 Ill 380, 81 NE2d 149. The case of People v. Wallenberg, 24 Ill2d 350, 181 NE2d 143, cited by the People in support of this position is not controlling. The court in People v. Jeffries, 26 Ill2d 248, 186 NE2d 242, distinguished the Wallenberg case on the ground that the personal knowledge of the judge was used to contradict important testimony offered by the defense. This is not true in the case at bar.

The People further maintain that the trial judge failed to consider the purpose of the defendant in selling the magazines in question as evidenced by the fact that they were sold in a place where "girlie-type" magazines were sold and nudist movies shown. While the Statute does provide a list of evidence which may be considered in determining obscenity, the list serves only as a guide to the types of evidence which may be considered. SHA, 1964 ed, chap 38, par 11–20, pp 689–690. However, the record clearly shows that the trial judge did consider this evidence because he found "obscenity is not a literary contagion which one book can get from another. If a book or publication is within the protection of the First Amendment of the Constitution of the United States it attains that attribute at the time of publication."

It does not appear that the trial judge failed to consider the appeal of the publication to the "ordinary adult," as the People maintain. In his conclusions of law, the trial judge stated the test of obscenity was "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole, appeals to prurient interest." It appears that the trial court did consider the publications in the eyes of the "ordinary adult."

71

The People finally maintain that under the recent authority of Ginzburg v. United States, 383 US 463, defendant's purpose in selling the magazines as evidenced by the environment in which they were sold and the area in which the defendant's arcade was located renders defendant guilty of the crime of obscenity. The indictments did not charge defendant with committing obscenity by having held the magazines out to be obscene, but charged that he sold obscene material. The People's theory was based upon the publications being obscene *per se* and not upon their being obscene through the form and method of sale engaged in by defendant.

For these reasons the order dismissing the indictments is affirmed.

Order affirmed.

LYONS, P. J. and BRYANT, J., concur.