# Staunton

## Charles House v. Commonwealth of Virginia.

September 5, 1969.

Record No. 7002.

Present, All the Justices.

*Michael R. Caprio, Jr.,* for plaintiff in error.

*Anthony F. Troy, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief) for defendant in error.

EGGLESTON, C.J., delivered the opinion of the court.

An indictment in the court below charged that Charles House "did knowingly and unlawfully sell and commercially distribute and exhibit obscene items," specified as an issue of the magazine KNIGHT and two issues of the magazine RAW, "knowing the said items * * * to be obscene," in violation of Code § 18.1-228, as amended.[1]

The defendant filed a motion to quash the indictment on the ground that § 18.1-228 was unconstitutional and void, because, he said, the last sentence in paragraph (4) of the section illegally dispensed with the required proof of scienter. The sentence reads: "Possession in public or in a public place of any obscene item as defined in this article shall be deemed prima facie evidence of a violation of this section."

The trial court sustained the defendant's position that this portion of the statute was unconstitutional, but held that it was severable from the remaining portion which was constitutionally valid and would support a conviction. Accordingly it overruled the motion to quash. Upon a plea of not guilty the defendant was tried by a jury which found him guilty as charged and fixed his punishment at a fine of $500. His motion to set aside the verdict because of the insufficiency of the evidence was overruled and judgment was entered on the verdict.

On appeal the defendant's principal contentions are: (1) the trial court erred in overruling his motion to quash the indictment; and (2) the evidence was insufficient to sustain the verdict and judgment.

The underlying facts are not in dispute. Detective H. C. Winters of the Norfolk Police Department testified that on July 20, 1966, "on

---

[1] Section 18.1-228, as amended by Acts of Assembly 1962, ch. 289, p. 414, reads:

*"Production, publication, sale, possession, etc., of obscene items.*—Every person who knowingly:

"(1) Prepares any obscene item for the purposes of sale or commercial distribution; or

"(2) Prints, copies, manufactures, produces, or reproduces any obscene item for purposes of sale or commercial distribution; or

"(3) Publishes, sells, rents, lends, transports in intrastate commerce, or commercially distributes or exhibits any obscene item, or offers to do any of these things; or

"(4) Has in his possession with intent to sell, rent, lend, transport, or commercially distribute any obscene item, shall be guilty of a misdemeanor. Possession in public or in a public place of any obscene item as defined in this article shall be deemed prima facie evidence of a violation of this section."

complaint," he visited the Hampton Stores, operated by Annette Swersky on Hampton Boulevard in the city of Norfolk, and observed there a number of so-called "girlie" magazines displayed for sale. From these he selected and paid for, at $1.50 each, an issue of KNIGHT and two issues of RAW. These magazines were identified by him and offered in evidence at the trial. He selected these magazines because, as he expressed it, "[t]o me, they were not proper to be on the newsstand for the general public." He specified certain pictures in these magazines in which, he said, "male and female both, were portrayed together and there were, to me, leading indications of not normal circumstances."

It was stipulated at the trial that these and similar magazines were distributed by Dominion News of Newport News, a corporation of which the defendant is the secretary and treasurer, and which has been engaged in the business of distributing such publications throughout Tidewater Virginia for some eighteen years. The defendant admitted on the stand that he had delivered the three magazines here involved to the Swersky store.

The defendant also testified that the magazines which his corporation distributed were shipped to it by the publishers and distributed to retail customers on a weekly basis. Because of the large number of publications distributed it was "impossible" for him to inspect all of them. As to the three particular magazines specified in the indictment, the defendant testified that he had "looked at" KNIGHT to see if there were any articles which might be of interest to him, but found none. He admitted that he knew that the magazines were similar to other publications which his corporation had distributed throughout the Tidewater area.

Dr. Dietrich W. Heyder, a psychiatrist, called as a witness for the Commonwealth, testified that the magazines, particularly the issue of RAW, "not only appeal to * * * the normal sexual strive and enjoyment, but also to the aspect personality of aggressive elements of sensuality." In other words, he said, the magazines "appeal to sexual gratification through aggression as opposed to that of the norm." This witness further testified that in the magazines there were pictures of "some homosexual scenes" and "some lesbians." He characterized the magazines as being "potentially dangerous."

Dr. Thelma B. Curl, a professor of English at Norfolk State College, testified that in her opinion the dominant theme of the magazines appealed to the "prurient interest," had "no redeeming social

value," and that "as a member of the community" she "would consider them offensive."

On the other hand, witnesses for the defendant testified that in their opinion the magazines did not appeal to the "prurient interest" but had some literary merit and social value "to some people."

■ We agree with the trial court's action in overruling the motion to quash the prosecution. Assuming, but not deciding, that the last sentence in paragraph (4) of Code § 18.1-228 is constitutionally defective, it does not follow that the remaining portion of the statute is invalid. Without any other change this sentence was added to the statute by Acts of Assembly 1962, ch. 289, p. 414. Prior to such amendment the statute was complete and its purpose and effect were clearly delineated and could be carried into effect.

We have several times pointed out that an act may be valid in one part and invalid in another, and, if the invalid is severable from the remainder, the invalid part may be ignored, provided the remaining portions are sufficient to accomplish the purpose and effect of the legislative intent. See *Hannabass* v. *Maryland Casualty Co.*, 169 Va. 559, 568, 194 S. E. 808, 811-812 (1938), and cases there cited.

In the present case, under this principle the trial court properly held that the last sentence in paragrph (4) was severable from the remaining portion of the statute which was constitutionally valid and would support a conviction.

As to the sufficiency of the evidence, we agree with the defendant that since the statute provides punishment for "[e]very person who *knowingly* * * * commercially distributes * * * any *obscene* item" (emphasis added), the burden was on the Commonwealth to show that the magazines were obscene and that the defendant knew they were obscene when he distributed them to the retail dealer Swersky.

The critical issue, then, is whether, as the defendant contends, these magazines are within the area of free speech and press protected by the First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, or whether, as the Commonwealth contends, they are obscene. If they are obscene they are not constitutionally protected. *Roth* v. *United States*, 354 U. S. 476, 485, 77 S. Ct., 1304, 1 L. ed. 2d 1498 (1957).

In the determination of that issue this court is, of course, bound by the decisions of the Supreme Court of the United States which is the final arbiter of the proper interpretation of the Federal Constitution.

■ In *Roth* v. *United States, supra,* "obscene material" was defined (354 U. S. at 487) and standards for determining such obscenity were prescribed (*Id.,* at 489). That holding was thus explained and amplified in *A Book, etc.* v. *Attorney General of Com. of Mass.,* 383 U. S. 413, 86 S. Ct. 975, 16 L. ed. 2d 1 (1966):

> "We defined obscenity in *Roth* in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U. S. at 489. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U. S. at 418.

In the present case, at the request of the prosecution and without objection by the defendant, the trial court granted Instruction No. 2, which thus prescribed the test for determining whether the magazines here involved were obscene:

> "The court instructs the jury that the test to determine obscenity is as follows: whether to the average person, applying contemporary community standards:
> "(1) The dominant theme of the material taken as a whole appeals to a prurient interest, that is a shameful or morbid interest in nudity and sex;
> "(2) The material is patently offensive because it affronts contemoprary community standards relating to the description or representation of sexual matters; and
> "(3) The material is utterly without redeeming social value."

It will be observed that this is substantially in accord with the test prescribed in *A Book, etc.* v. *Attorney General of Com. of Mass., supra,* 383 U. S. at 418.

The question presented to us is whether the evidence on behalf of the Commonwealth was sufficient to warrant a finding that tested by the principles outlined in this instruction these publications are obscene. We agree with the defendant that it was not sufficient.

■ In the first place, there is no evidence that according to or applying contemporary community standards the dominant theme of the magazines in question appealed to the prurient interest of the reader, or that they were patently offensive because they affronted contemporary community standards relating to the description or representation of sexual matters. That is, there is no evidence that these publications were offensive because they affronted contemporary community standards relating to the description of such matters. The testimony of Dr. Curl that "as a member of the community" she would "consider" the magazines "offensive" is merely evidence that they were offensive to her personally. It is not evidence of contemporary community standards with respect to such matters.

In his brief the Attorney General admits the absence of such evidence but argues that it was not necessary. We do not agree.

The subject was fully explored and discussed in *In re Giannini*, 72 Cal. Rptr. 655, 446 P. 2d 535 (1968) certiorari denied 395 U. S. 910, 89 S. Ct. 1743, 23 L. ed. 2d 223. After noting the conflict of authority on the subject and listing some of the cases representing the opposing views, the Supreme Court of California held that in the absence of a showing that the questioned material affronted the standards of the community, proof of obscenity failed. It thus summarized its conclusion:

> "Relying principally on the well established doctrine that jurors should not be endowed with the prerogative of imposing their own personal standards as the test of criminality of conduct, we hold that expert testimony should be introduced to established community standards. We cannot assume that jurors in themselves necessarily express or reflect community standards; we must achieve so far as possible the application of an objective, rather than a subjective, determination of community standards. An even-handed application of the criminal law, even with evidentiary guidance (cf. *In re Newbern* (1960) 53 Cal. 2d 786, 797, 3 Cal. Rptr. 364, 350 P. 2d 116), is sufficiently difficult in an area so confusing and intricate as obscenity. To sanction convictions without expert evidence of community standards encourages the jury to condemn as obscene such conduct or material as is personally distasteful or offensive to the particular juror. * * * " 446 P. 2d at 543.

To the same effect see *Smith v. People of the State of California*, 361 U. S. 147, 165, 80 S. Ct. 215, 4 L. ed. 2d 205 (1959) (Frank-

furter, J., concurring); *United States* v. *Klaw,* 350 F. 2d 155, 167 (2d Cir. 1965).

In accord with this view we hold that, in the absence of evidence that these magazines affronted the standards of the community, the evidence on behalf of the Commonwealth was insufficient to sustain the conviction of the defendant.

Furthermore, since this is a criminal prosecution the burden was on the Commonwealth to prove beyond a reasonable doubt that these magazines were obscene.

In *Jacobellis* v. *State of Ohio,* 378 U. S. 184, 84 S. Ct. 1676, 12 L. ed. 2d 793 (1964), it was pointed out by Justice Brennan that the determination whether a particular motion picture, book, or other work of expression is obscene is not merely a factual matter on which a jury's verdict is conclusive, but also involves an issue of constitutional law which must ultimately be decided by the court. 378 U. S. at 187, 188. This view was concurred in by Justices Goldberg and Harlan, and none of the other Justices disagreed on the point.

From an examination of the three magazines here involved, in the light of that opinion and the other rules laid down by the Supreme Court of the United States, our conclusion is that it has not been shown beyond a reasonable doubt that these publications are obscene.

Without attempting to describe the magazines, or the particular scenes depicted there which the witnesses for the Commonwealth found offensive, it is sufficient to say that they are what is commonly called "girlie" magazines. They carry pictures of nude and partly clothed men and women. The leading article in one relates to the experiences of a call-girl prostitute. But nudity is not necessarily obscenity, as the courts have frequently pointed out. *Excellent Publications, Inc.* v. *United States,* 309 F. 2d 362 (1st Cir. 1962); *People* v. *Biocic,* 80 Ill. App. 2d 65, 224 N. E. 2d 572 (1967). And in *A Book, etc.* v. *Attorney General of Com. of Mass., supra,* 383 U. S. 413, 86 S. Ct. 975, 16 L. ed. 2d 1, it was held that the book commonly known as "Fannie Hill," recounting the life of a prostitute, was not obscene.

In *Redrup* v. *State of New York, Austin* v. *State of Kentucky,* and *Gent* v. *State of Arkansas,* 386 U. S. 767, 87 S. Ct. 1414, 18 L. ed. 2d 515 (1967), it was the majority view, expressed in a per curiam opinion, that girlie-type magazines similar to those with which we are here concerned were not obscene. Certainly, in the light of that opinion, it cannot be said that it has been shown beyond a reasonable

doubt that the magazines here in question are obscene and beyond the area of constitutionally protected expressions.

Accordingly, the judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*