# Richmond

## Bobby A. Price v. Commonwealth of Virginia.

January 14, 1974.

Record No. 7880.

Present, All the Justices.

*Michael Kent Curtis* [N.C.]; *John W. Carter* (*Smith, Carrington, Patterson, Follin & Curtis* [N.C.]; *Carter & Wilson*, on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

In *Price* v. *Commonwealth,* 213 Va. 113, 189 S.E.2d 324 (1972), we affirmed the judgment of the Circuit Court for the City of Danville sentencing Bobby A. Price to serve 12 months in jail and to pay a fine of $1,000 for exhibiting an obscene motion picture in violation of Code § 18.1-230 (Cum. Supp. 1971). On June 25, 1973, the Supreme Court of the United States granted Price a Writ of Certiorari, vacated the judgment against him and remanded the case to us for further consideration in light of the decisions handed down on June 21, 1973, in *Miller* v. *California,* 413 U.S. 15 (1973), *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49 (1973), and companion cases.

The only new questions now presented to us are whether Code § 18.1-230 is unconstitutionally vague or overbroad in light of the new test of obscenity promulgated in *Miller,* which established the following guidelines for the trier of fact to use in determining whether a work is obscene:

"(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, . . .

"(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and

"(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24.

■ Part (a) of the *Miller* test requires no revision of our holding in *Price.* This aspect of the *Miller* test is not new, for the language of part (a) originated in *Roth* v. *United States,* 354 U.S. 476, 485 (1957). As *Price* expressly followed *Roth* in this respect, *see* 213 Va. at 115, 189 S.E.2d at 326, we find that *Price* complied fully with the requirements of part (a) of the *Miller* test.

*Miller* and *Paris Adult Theatre I* support our holding in *Price,* following *Alexander* v. *Commonwealth,* 212 Va. 554, 186 S.E.2d 43 (1972), that the community standard to be applied is that of the lo-

cality rather than that of the state or nation. Although *Miller* had no occasion to consider whether the use of local standards was constitutionally permissible, it held that national standards were not constitutionally required and that state standards were constitutionally acceptable. In reaching this result the court noted that the diversity of our nation would prevent the effective formulation of a national standard of obscenity. 413 U.S. at 30. The court also relied on the Anglo-American tradition of allowing lay jurors to draw upon the standards of their community. *Id.*

The reasons given in *Miller* for holding that national standards are not constitutionally required in obscenity cases compel the same conclusion with respect to statewide standards. It would be difficult, if not impossible, for a Virginia jury to formulate a statewide standard of obscenity, for our state comprises communities with a vast diversity of life styles. Materials which do not offend the community standards of our metropolitan areas might well be regarded as obscene by the standards of some of our rural communities. Moreover, Virginia juries have traditionally relied on local rather than statewide community standards. *See, e.g., Easterling* v. *Walton,* 208 Va. 214, 218, 156 S.E.2d 787, 790 (1967), which restated the rule that a jury must apply local community standards in medical malpractice cases.

In *Paris Adult Theatre I* the Supreme Court rejected the contention that expert evidence of obscenity is required when the motion picture or other material is placed in evidence, 413 U.S. at 56, a ruling that we had anticipated in *Price*. This ruling reinforces our conclusion that local community standards may be applied, for expert testimony would be required to establish statewide standards. *See Miller,* 413 U.S. at 31.

██ The main thrust of Price's argument is that the Virginia obscenity statute is void for vagueness or overbreadth under part (b) of the *Miller* test because the statute did not define with specificity the conduct which a work must portray to be held obscene. In *Miller* the Supreme Court stated that the conduct whose portrayal is proscribed must be specifically defined by statute, as written or as authoritatively construed. The court amplified this requirement by giving examples of descriptions that are sufficiently specific:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of mastur-

bation, excretory functions, and lewd exhibition of the genitals." 413 U.S. at 25.

The Virginia definition of obscenity is found in Code § 18.1-227 (Cum. Supp. 1971), which provides:

"The word 'obscene' . . . shall mean that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters."

We have narrowed this definition by judicial construction. In *House* v. *Commonwealth*, 210 Va. 121, 127, 169 S.E.2d 572, 577 (1969), we reversed an obscenity conviction involving a magazine which featured pictures of nude and partially clothed men and women. There we held that a portrayal of nudity is not, as a matter of law, a sufficient basis for a finding that a work is obscene. *See also Upton* v. *Commonwealth*, 211 Va. 445, 447, 177 S.E.2d 528, 530 (1970). Thus, the Virginia obscenity law under which Price was convicted limits the class of works which might be found obscene to portrayals of sexual activity or excretion, not including mere nudity, which go beyond the customary limits of candor in representing such matters.

We conclude that the Virginia obscenity statute, as construed, prohibits only hard core pornography such as the examples delineated in *Miller* and does not restrict constitutionally protected speech and writing. We do not believe that the *Miller* examples were intended to preempt or standardize state obscenity statutes, for the Supreme Court emphasized that it was not the court's function to propose regulatory schemes for the states. 413 U.S. at 25. Consequently, we hold that our obscenity law is not void for overbreadth.

We also conclude that the Virginia obscenity law is not void for vagueness. A statute regulating obscene materials is not void for vagueness if it provides "fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." *Miller* v. *California*, 413 U.S. at 27. "All that is required is that the language of the statute conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Roth* v. *United States*, 354 U.S. 476, 491 (1957). Thus, in *Roth* the court upheld over a challenge of vagueness a federal statute making

punishable the mailing of material that is "obscene, lewd, lascivious, or filthy . . . or other publication of indecent character." In *United States* v. *12 200-Ft. Reels of Super 8mm Film*, 413 U.S. 123, 130, n. 7 (1973), the court left open the issue of whether the words "obscene", "lewd", "lascivious", "filthy", "indecent" or "immoral" raised a serious doubt concerning the vagueness of a federal obscenity statute.

The Virginia obscenity statute, as construed, gives fair notice of the meaning of obscenity. We believe that a person of ordinary understanding would have no difficulty in determining what sorts of material would be regarded as obscene under the statute.

■ We also find that the *Price* decision does not violate part (c) of the *Miller* test. The jury convicted Price after having been instructed that to find the motion picture obscene it must find that the film was "utterly without redeeming social value." After viewing the film we also reached the conclusion that it was obscene as thus defined. In light of these findings the film would necessarily be obscene under part (c) of the *Miller* test, which is broader and less rigorous than the test applied in *Price*. *See People* v. *Enskat*, 33 Cal. App. 3d 900, 109 Cal. Rptr. 433 (1973), which held that *Miller* does not require reversal of state obscenity convictions under laws that define obscenity at least as narrowly as *Miller* did. *Accord, United States* v. *Thevis*, 484 F.2d 1149 (5th Cir. 1973).

For the foregoing reasons we adhere to the views previously expressed, which we find consistent with *Miller* and its companion cases, and we reaffirm the conviction order of the trial court.

*Affirmed.*