COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


JOHN RUSSELL HARTMAN

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0569-98-3          JUDGE SAM W. COLEMAN III
                                         MARCH 30, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                  Porter R. Graves, Jr., Judge

          James N. Dickson, III, for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     John Russell Hartman was convicted in a bench trial of three

counts of stalking in violation of Code § 18.2-60.3, four counts

of contributing to the delinquency of a minor in violation of Code

§ 18.2-371, two counts of distributing obscene material in

violation of Code § 18.2-374, and three counts of possessing

obscene material with the intent to distribute in violation of

Code § 18.2-374.  Upon review, we reverse one count of possession

with the intent to distribute obscene items in violation of Code

§ 18.2-374, and one count of contributing to the delinquency of a

minor in violation of Code § 18.2-371 because the evidence was

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

insufficient to prove that the magazine that the defendant distributed was obscene. We affirm the remaining ten convictions.

BACKGROUND

On an appeal challenging the sufficiency of the evidence, we view the facts in the light most favorable to the Commonwealth, and grant to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Over the course of two days, Hartman drove through residential neighborhoods throwing allegedly obscene material out his car window at, or in the direction of, five juvenile girls. The juveniles who received the material were K.T. (eleven years old), H.H. (eight years old), and A.L. (ten years old). The allegedly obscene material consisted of several pages of glossy advertisements for "telephone sex lines" that contained sexually explicit photographs and writing, which were designated at trial as exhibits one, two, and six.[1]

---

[1]The photographs are of women and men with genitalia and breasts exposed, all or most of which depict or suggest acts of fellatio, cunnilingus, masturbation, and sexual intercourse. Although the writing on the advertisements literally invites the reader to engage in fellatio, cunnilingus, anal intercourse, and sadomasochistic acts with the depicted models, the advertisements clearly intend to solicit patrons for the telephone sex industry rather than for the actual described sexual liaisons.

-

On the first day, Hartman threw the advertisements designated as exhibit one[2] out the window of his vehicle "right by where" K.T. was standing. K.T. retrieved the advertisement, which she described as "really gross," and gave it to her mother, Sara, who testified that K.T. was upset by its content. Sara immediately called across the street for her other daughter to return home. As H.H., who had accompanied Sara's daughter across the street, returned to her home, Hartman returned and threw the advertisements designated as exhibit two[3] in the vicinity of H.H. Sara intercepted the advertisements before H.H. could retrieve them. Shortly thereafter, when Hartman

---

[2]Exhibit one is a double-sided eight by ten inch page of glossy photos and text advertising six telephone sex lines. The photographs depict exposed genitalia, acts of fellatio, and cunnilingus. In at least one example the male genitalia appears erect. The text invites the reader to engage in acts of sadomasochism and fellatio. An example of text is, "I'll suck you 'til you're limp. Call me, you stud!" Examples of the telephone numbers are 1-800-***-ORGY, and 1-800-***-SUCK.

[3]Exhibit two is a pamphlet of eight five and one-half inch by eight inch pages advertising twenty-six telephone sex numbers. The photographs include exposed genitalia of men, women, and one alleged hermaphrodite. In several instances male genitalia appears erect. Models are depicted masturbating, performing acts of fellatio, and having sexual intercourse. The text, among other things, invites the reader to engage in acts of sadomasochism, anal intercourse, fellatio, cunnilingus and masturbation. One of the tamer examples of text exclaims, "Lets masturbate together now." Examples of the telephone lines are, 1-888-***-WHIP and 1-888-*WETSEX.

drove through that neighborhood again, Sara noted and relayed to the police Hartman's description, his license plate number, and that he was driving a blue car.

On that same day, a person in a light blue car drove by A.L. while she was riding her bicycle. From about fifty feet away, the driver threw a magazine from his vehicle which A.L. retrieved. The mother of one of A.L.'s friends destroyed the magazine, which was unavailable as evidence for trial. A.L. recalled that the magazine contained photographs of "dirty stuff," but she could not recall specifics.

Later, on the same day that Hartman drove past A.L., he also drove beside A.E. and M.S. as they walked along the street. Although unacquainted with the children, Hartman asked A.E. and M.S. if they wanted a ride, which they declined. He then told them that they were very pretty and that he could get them modeling careers in New York if they would provide their addresses. Again, they declined. When they tried to cross the street, Hartman blocked their way with his car. He called to them again asking them about prospective modeling careers. When they again refused, Hartman drove off.

The next day, Hartman again drove by A.E. and M.S. but this time he threw out advertisements, designated exhibit six,[4] in the

_____

[4]Exhibit six is a double-sided eight-inch by ten-inch glossy page advertising six different telephone sex lines. It includes

-

vicinity of A.E. and M.S.  He then slowed his vehicle and looked in his rear view mirror "to see if [A.E. and M.S.] had picked [the advertisements] up."  A.E. picked it up and gave it to M.S.'s mother who delivered it to the police.  Later that day, Hartman drove by A.E. and M.S. again.  This time A.E. and M.S. engaged an adult acquaintance in conversation so that Hartman would not stop again.  Hartman drove past and looked at them.

M.S. testified that when she saw the advertisements, she "did not like [them]."  The second and third encounters with Hartman made her "scared and nervous."  Asked how she felt about any of the encounters, A.E. stated that "it kind of frightened" her.

As a result of these events, the Commonwealth charged Hartman with twelve misdemeanors.  Hartman's three counts of stalking in violation of Code § 18.2-60.3 arise from the repetitive acts of driving by and throwing sexually explicit material toward K.T., A.E., and M.S. and from approaching A.E. and M.S. and making unsolicited comments to them which any reasonable person would consider threatening.  Hartman's four counts of contributing to the delinquency of a minor in

---

photographs of women and men with exposed genitalia and breasts. Among other things, the photographs depict fellatio and masturbation.  The text invites the reader to engage in similar acts with language such as "hard and waiting for you," and "I'll suck you 'til you're limp."  A representative telephone number is 1-800-***-HUNG.

violation of Code § 18.2-371 resulted from his throwing sexually explicit material toward K.T., A.L., A.E., and M.S.  Hartman's two counts of distributing obscene material in violation of Code § 18.2-374 arise from his throwing sexually explicit material toward A.E. and M.S.  Finally, Hartman's three charges of possession of obscene materials with intent to distribute in violation of Code § 18.2-374 arise from his possession of the sexually explicit material, including the advertisements and the unavailable but allegedly "dirty" magazine, which he later distributed to K.T., A.L., and H.H.

ANALYSIS

### A.  DISTRIBUTION AND POSSESSION OF OBSCENE MATERIALS

We affirm two counts of distributing obscene material in violation of Code § 18.2-374 and two of the three counts of possession of obscene material with intent to distribute in violation of Code § 18.2-374.  We reverse the possession of obscene material with the intent to distribute that was based upon evidence of a "dirty" magazine that Hartman threw at A.L., which had been destroyed before trial.

It is well established that in determining whether an item is obscene, the trier of fact must apply the "community standards" test in evaluating whether the material exceeds that which the community deems acceptable.  See Miller v. California, 413 U.S. 15, 24 (1973); Roth v. United States, 354 U.S. 476, 489

-

(1957); Price v. Commonwealth, 214 Va. 490, 491, 201 S.E.2d 798, 799 (1974).[5]  Expert testimony establishing a community's standards is not required.  See Price, 214 Va. at 492, 201 S.E.2d at 800.  Instead, a fact finder may draw on his or her knowledge of what is an acceptable standard for sexually explicit material in his or her community, or what is considered obscene, in much the same way as a fact finder applies the standard of a reasonable person in other areas of the law.  See Hamling v. United States, 418 U.S. 87, 105-07 (1974).

> To arrive at a measure of community
> tolerance of pornographic material the trial
> judge may rely upon his own experience in
> the community and decide as best he can what
> most people seem to think about such
> materials.  If, on the other hand, he has
> little or no knowledge of their views, he
> may turn to opinion proof and, if the
> government fails to offer such proof, he may

---

[5]In Price, the Virginia Supreme Court reproduced the following test for obscenity as established in Miller:

> (a) whether the average person, applying
> contemporary community standards would find
> that the work, taken as a whole, appeals to
> the prurient interest, . . .
>
> (b) whether the work depicts or describes,
> in a patently offensive way, sexual conduct
> specifically defined by the applicable state
> law, and
>
> (c) whether the work, taken as a whole,
> lacks serious literary, artistic, political,
> or scientific value.
>
> 413 U.S. at 24.

-

be relegated to finding that it has failed
to sustain its burden.

United States v. Various Articles of Obscene Merchandise, 709
F.2d 132, 136 (2d Cir. 1983).

Therefore, accepting Hartman's contention that the
Commonwealth failed to put on evidence establishing the
community's standards, the trial judge nevertheless had
authority to determine the community's standards and to find
that the sexually explicit exhibits are obscene in violation of
the local community standards as he understood them.

In concluding that the material qualified as obscene, the
trial judge relied upon a finding that the exhibits each
included written statements and depictions that propose acts of
sodomy in violation of Code § 18.2-361 ("Crimes against
nature"). We decline to adopt a standard making it a per se
violation of community standards for a writing to propose an act
of sexual conduct that is in violation of the law. A fact
finder is entitled to conclude that literature, art, or
photography, which may depict sexual acts that are illegal in
Virginia, is not obscene where the works of literature, art, or
photography have serious literary, artistic, political, or
scientific value. However, where the material "has as its
dominant theme or purpose an appeal to the prurient interest in
sex," Code § 18.2-372, the fact finder may rely upon a finding

-

that the material proposes unlawful sexual acts in determining whether that material violates community standards of decency. The trial judge correctly ruled that he could determine the community's standards in deciding whether the material was obscene and did not err in giving consideration to the fact that the material depicted sexual acts that are illicit and illegal in Virginia.  Accordingly, we affirm the two convictions for distribution of obscene materials (arising from distribution of sexually explicit material which is exhibit six, to A.E. and M.S.) and the two convictions for possession with the intent to distribute obscene materials (specifically, one count of possession with intent to distribute the sexually explicit material which is exhibit one to K.T., and one count of possession with intent to distribute the material designated as exhibit two to H.H.).

Regarding the conviction for possession of obscene material with intent to distribute arising from Hartman's possession of a "dirty" magazine that he threw toward A.L., we reverse because the evidence is insufficient to prove that the magazine was obscene.  The evidence established that Hartman threw a magazine out his window that A.E. thought was a Playboy and had photographs of "like dirty stuff."  The magazine was destroyed and was unavailable at trial.  In the light most favorable to the Commonwealth, the evidence is insufficient to support the

-

conclusion that the magazine, described only as a Playboy or containing "dirty stuff," was obscene. The trial judge had insufficient evidence to determine whether the contents of the magazine violated community standards.

### B. CONTRIBUTING TO THE DELINQUENCY OF A MINOR

Code § 18.2-371 states in pertinent part: "Any person eighteen years of age or older . . . who (i) willfully contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent . . . shall be guilty of a Class 1 misdemeanor." Code § 16.1-228 defines delinquent child as "a child who has committed a delinquent act." That code section defines delinquent act as "(i) an act designated a crime under the law of this Commonwealth, or an ordinance of any city, county, town or service district, or under federal law, (ii) a violation of § 18.2-308.7 [("Possession and transportation of certain firearms by persons under the age of eighteen")] or (iii) a violation of a court order as provided in § 16.1-292."

Encouraging a juvenile to engage in a delinquent act, where the juvenile actually engages in the proposed delinquent act, clearly constitutes contributing to the delinquency of a minor. However, encouraging a juvenile to commit a delinquent act, whether the juvenile does so or not, is sufficient to contribute to the delinquency of a minor in violation of the statute. See

-

Hubbard v. Commonwealth, 207 Va. 673, 677, 152 S.E.2d 250, 253 (1967); Bibbs v. Commonwealth, 129 Va. 768, 771, 106 S.E. 363, 364 (1921).  The sexually explicit material, identified as exhibits one, two, and six, have as their primary purpose to advertise "telephone sex."  The obscene literature invites the reader to engage in unlawful sexual acts with the pictured models.  Obviously, we recognize these invitations to be fantasies designed to market the telephone sex lines.  Although the fact finder could conclude that Hartman was distributing the sexually explicit material for the purpose of encouraging the children to call the telephone sex lines, under the circumstances here, the fact finder was entitled to conclude that Hartman distributed the obscene material to these young girls for the additional purpose of encouraging them to engage in unlawful sexual acts.  Thus, we affirm Hartman's convictions for contributing to the delinquency of K.T., A.E., and M.S. by exposing them to obscene material for the purpose of encouraging them to engage in unlawful sexual activities.

We find the evidence insufficient to support Hartman's conviction for contributing to the delinquency of A.L.  The Commonwealth showed only that Hartman exposed A.L. to a magazine that A.L. described as "dirty."  For essentially the same reasons that the evidence failed to prove the magazine was

-

obscene, the evidence was insufficient to support a conclusion that Hartman encouraged A.L. to engage in a delinquent act.

### C. STALKING

The trial judge did not err in convicting Hartman of three counts of stalking for repeated episodes of returning and throwing sexually explicit material toward K.T., A.E., and M.S., and for his repeated conduct of driving by A.E. and M.S. and engaging in conversation that would reasonably frighten young girls. To support a conviction of stalking, the Commonwealth had to prove that Hartman, "on more than one occasion engage[d] in conduct directed at another person with the intent to place, or with the knowledge that the conduct place[d], that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person." Code § 18.2-60.3.

Hartman threw obscene material at or in the direction of K.T. on two separate occasions. Although unable to positively identify Hartman at trial, K.T.'s testimony was that a man drove by in a blue vehicle and threw out printed material that consisted of sexually explicit advertisements. Moments later K.T.'s mother, Sara, saw a blue car pass through the neighborhood and throw out more sexually explicit material. Sara positively identified Hartman as the driver of the vehicle. From this testimony, the fact finder reasonably could conclude

-

that Hartman was the individual that threw out the explicit material in K.T.'s direction.

After the foregoing incident, Hartman returned to the same neighborhood, and threw out more sexually explicit printed material. Although K.T. did not actually see this material, she saw Hartman pass by her the second time. The evidence tended to prove that he threw the material in K.T.'s direction and the fact finder could conclude that it was intended for her. K.T. testified that when she saw the material that he threw out, she felt "scared and nervous."

Hartman also approached A.E. and M.S. on the same day, and on the next day he drove by them and threw sexually explicit material toward them, and then later again passed them in his car. He asked them if they wanted a ride and told the young girls that he could get them New York modeling careers. At trial, both A.E. and M.S. testified that they were fearful of Hartman's conduct toward them on at least one of these occasions.

Based on these facts, the fact finder was entitled to conclude that Hartman engaged in two events in which he intended, or knew, that his conduct would place the young girls K.T., A.E., and M.S., in reasonable fear of death, criminal sexual assault, or bodily harm. See Fortune v. Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 27 (1992) (fact finders are

-

"often allowed broad latitude in determining the specific intent of the actor"); Parks v. Commonwealth, 221 Va. 492, 494, 270 S.E.2d 755, 759 (1980) ("[c]ircumstantial evidence is as acceptable to prove guilt as direct evidence"); Webber v. Commonwealth, 26 Va. App. 549, 565, 496 S.E.2d 83, 90 (1998) (stating that the trier of fact is entitled to infer that a person intends the natural consequences of his or her actions).

Accordingly, we affirm ten of Hartman's twelve convictions. We reverse the two convictions relying upon the evidence that Hartman threw a "dirty" magazine at or in the direction of A.L. The Commonwealth produced insufficient evidence to support a conclusion that the magazine thrown at A.L. was obscene or that it encouraged a delinquent act.

<u>Affirmed in part,
and reversed
in part.</u>

-