UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Lorish

WILLIAM CHRISTIAN KELLEY

v.      Record No. 0179-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 3, 2024

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

(Roger A. Whitus; Slipow & Robusto, P.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Suzanne Seidel Richmond,
Assistant Attorney General, on brief), for appellee.

William Christian Kelley, an inmate at the Virginia Beach Correctional Center, was

convicted of exposing his penis in a public place during an electronic video call with a

consenting adult female, in violation of Code § 18.2-387. This was his fourth such conviction.

Kelley argues that the evidence was insufficient to show that his actions were obscene or that

they took place in a public place. After examining the briefs and record, the panel unanimously

holds that oral argument is unnecessary because "the appeal is wholly without merit," and we

conclude that the evidence was sufficient to sustain his conviction. Code § 17.1-403(ii)(a); *see also*

Rule 5A:27(a).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Inmates at the Virginia Beach Correctional Center have access to devices ("tablets") on which they may conduct electronic visitations with parties outside the facility. The tablets are attached to chargers mounted on the wall and must remain on the charger while in use. Inmates use these tablets subject to certain conditions, including consent to monitoring and prohibitions on using pornography and "engag[ing] in nudity, profanity, suggestive body gestures, terminology and/or any other activity deemed inappropriate in the sole discretion of [the service provider] or a correctional facility." Prisoners must consent to these terms of service to use the tablets.

When an outside party calls an inmate, the tablet rings and displays the name of the inmate who is receiving either a video or phone call. The inmate then enters his booking number and a personal identification number (PIN) to access the system and accepts the call. A user agreement appears during this process that the inmate must accept.

Samantha DeGhetto was a deputy sheriff with the Virginia Beach Sheriff's Office. As a member of the criminal intelligence unit at the jail, one of her duties was to monitor prisoner tablet visits "to make sure there is no illegal activity happening within the jail." During one such review, DeGhetto discovered that Kelley had displayed "his penis on tablet visits." She testified that Kelley was warned not to do so on February 4, 2021. That said, she found that Kelley disobeyed this instruction and exposed his penis during tablet visits again on February 26, 2021, February 28, 2021, and May 10, 2021. Kelley was "written up on an in-house jail violation" for this behavior. But he continued to violate the rules during tablet visits and was therefore charged

---

[1] "We consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial." *Logan v. Commonwealth*, 299 Va. 741, 745 (2021) (quoting *Crawford v. Commonwealth*, 281 Va. 84, 97 (2011)).

with three criminal counts of indecent exposure. Kelley was convicted of all three charges in July 2021.

In June 2022, Kelley again exposed his penis during a tablet visit, which was recorded. He was indicted for indecent exposure, "such offense being the third or subsequent offense committed within a ten-year period, in violation of [Code] §§ 18.2-387; 18.2-67.5:1; [and] 18.2-10."[2] Kelley pleaded not guilty and requested a jury.

At trial, a redacted version of the recording was admitted into evidence. DeGhetto described what the video depicted: "to the left where the bars are, that's the catwalk. That's where deputies walk to do their security check, and directly behind is the inside of the cell block." The recording showed Kelley and the other inmates who shared a cell block with him. A separate video surveillance recording of the cell depicted Kelley retrieving toilet paper and a blanket from his bunk and putting up the latter as a makeshift screen behind which he conducted the tablet call.

During the recording of his tablet video call, Kelley exposed his erect penis to the camera. The act occurred around 10:30 or 11:00 p.m. In the redacted version of that recording shown to the jury, the incoming caller had been blurred out. DeGhetto testified that she viewed the recording without it being blurred and that it depicted a woman "completely nude performing sex acts on herself." The recording of Kelley's tablet visit also depicted the interior of the cell and other inmates in the background. From this video, it was not apparent whether anyone other than the female caller had witnessed Kelley exposing himself.

There were other cameras that captured events that night. The Commonwealth introduced a recording from the security camera inside Kelley's cell. This camera recording showed that

_____

[2] The Commonwealth introduced conviction orders for the previous offenses into evidence.

there were other inmates in Kelley's block. In it, Kelley can be seen walking away from the tablet and then coming back with a blanket and hanging the blanket to cover the tablet. Although the blanket provided some visual barrier between Kelley and his cellmates, the tablet recording showed movement behind the blanket and anyone walking by would have been able to see into the cell. The blanket blocked the surveillance video from capturing Kelley's actions.

DeGhetto testified that this recording showed that Kelley's cell was next to a hallway (the catwalk) and that the inside of his cell was visible through the open bars to anyone on the catwalk. She testified that several people had access to this hallway including deputies, individuals touring the jail, the librarian, nurses, and canteen workers. She did not, however, have any information or evidence that anyone was on the catwalk at the time of Kelley's tablet call.

John S. Bloom, an employee of ViaPath, the company that serviced the tablets and maintained the video recordings of tablet visits, testified at trial. The Commonwealth showed Bloom the location of the camera that recorded Kelley. Bloom testified that he was familiar with that location and that "as you walk by you can see completely in[to]" the cell. The Commonwealth also showed Bloom a portion of the video recording depicting the blanket that Kelley had hung up between the tablet he was using and the bars of his cell. Bloom testified that he had been in that location before and that he would have been able to see the area on the other side of the blanket. "The bars would be open on that section right there," he testified, "because the bars go all of the way to the wall. The tablet charger is maybe like two feet in on the wall." He explained that the tablet would need to be on a charger during a video call because "that's the way the site has designated it, so it has to be on there so that way they can't take it back to their cell or to their individual bunk and then cover up so you can't see what they are doing."

After the Commonwealth rested, Kelley moved to strike. The trial court denied the motion. Kelley presented no evidence and renewed his motion to strike, which the trial court likewise denied. The jury convicted him. The trial court sentenced Kelley to five years of imprisonment with four suspended subject to Kelley being of good behavior and on supervised probation for five years. Kelley appeals, challenging the sufficiency of the evidence presented at his trial.

ANALYSIS

Code § 18.2-387 provides that a "person who intentionally makes an obscene display or exposure of his person or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor." When a person commits such an indecent exposure after "ha[ving] previously been convicted within the 10-year period immediately preceding the offense charged of two or more" instances of that or certain other sex offenses, "he is guilty of a Class 6 felony." Code § 18.2-67.5:1. The trial court convicted Kelley of violating Code § 18.2-387 after having been so convicted on three previous occasions within the ten-year window specified by Code § 18.2-67.5:1. Kelley contests his conviction, asserting as his single assignment of error that "the evidence was insufficient as a matter of law to establish the elements of the offense." Specifically, he argues that "the Commonwealth's evidence failed" to prove either that he "committed an 'obscene' display" or "that he was in a 'public place or a place where others were present'" when he exposed himself.

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." *Brown v. Commonwealth*, 74 Va. App. 721, 729-30 (2022) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). We "conduct[] a *de novo* review when interpreting a statute." *Id.* at 730 (citing *Commonwealth v. Herring*, 288 Va. 59, 66 (2014)).

- 5 -

A.  Obscene or Indecent Exposure of One's Person or Private Parts

To secure a conviction for indecent exposure, the Commonwealth had to "prove that [Kelley's] conduct violated contemporary community standards of sexual candor." *Morales v. Commonwealth*, 31 Va. App. 541, 544 (2000) (citing *House v. Commonwealth*, 210 Va. 121, 126 (1969)).  We have previously held that "[p]roof that [a defendant] was exposing his genitals, that he was in a visibly aroused state, and that he was masturbating satisfied this requirement." *Id.* (citing *Hamling v. United States*, 418 U.S. 87, 104-05 (1974); *United States v. Garcia*, 927 F.2d 1442, 1450 (8th Cir. 1991); *United States v. Various Articles*, 709 F.2d 132, 135-36 (2d Cir. 1983)).  This conduct is much like Kelley's.[3]

Kelley argues that displaying his penis in a cell occupied by other inmates and observable by other persons who might transit the area was not an obscene or indecent display because it did not "go[] substantially beyond customary limits of candor and affront[] contemporary community standards of decency," as provided in *Miller v. California*, 413 U.S. 15, 31 (1973).  "These are humans," Kelley argued at trial; "[s]exual activity occurs in the jail . . . [i]t's going to continue to happen . . . [and] we can't pretend . . . that the people in jail are just not going to feel any sort of sexual urges or desires or drives or anything like that."  Kelley contends that he "was engaged in a consensual, albeit sexual, video encounter with another adult"; that "[t]he parties had clearly undertaken the encounter with the expectation of sexual conversation and conduct"; and that the display of his penis was "typical" and "to be expected in those circumstances" and was not "deviant or unexpected behavior."  Although conceding that "the jail has [an] ongoing need to address" sexual activity by prisoners, Kelley argued at trial that the regulations that the jail established to this

---

[3] The video recordings did not depict Kelley actually masturbating, but they depicted him retrieving toilet paper, which he took to the tablet.  During the recorded tablet call, he held the toilet paper up and showed it to the woman on the call, saying, "I got this for a reason."  Though it is not necessary to prove masturbation to sustain a conviction of the statute, we find that the jury could infer that Kelley intended to, and did, masturbate during the tablet call.

end were just "rules that the jail has. That's not the law." "In no way could th[e] display [of Kelley's penis] be described as 'substantially beyond' customary limits or expectations" in the "context" in which it occurred, he argues, and was not, therefore, "obscene."

We disagree. The jail's policies do not need to have the force of law to be relevant to the contemporary community standards of decency for inmates. Along with the jail's policies, other evidence established the standard of decency—repeated warnings from jail authorities to not engage in such sexual behavior during tablet calls, Kelley's three prior convictions for the same behavior, and the tablet user agreement, which specifically prohibited such conduct. Thus, Kelley's conduct "[went] substantially beyond customary limits of candor and affront[ed] contemporary community standards of decency" as applicable in the jail setting. *Miller*, 413 U.S. at 31.

### B. A Public Place

Kelley also argues that his conduct did not constitute indecent exposure because the location where he exposed himself was not a public place. Kelley says "[he] created a place behind the curtain and no one else was present behind that curtain." Further, the tablet call occurred at a time of day when "[he] would not have expected anyone to traverse the catwalk behind the curtain." Kelley's "endeavors to protect others from viewing [his actions] were so effective," he claims, "that an entire roomful of inmates carried on mere feet away, unaware of [his] actions behind the curtain," and "[t]here was no other plausible explanation for their non-reaction aside from the comprehensive success of [his] protective measures." "As such," Kelley asserts, he "created a private place for himself behind the curtain, and it was error to find otherwise."

Kelley's reliance on his efforts to conceal his conduct from fellow inmates is misplaced. Code § 18.2-387 states that an indecent exposure occurs when one "intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, *or* in any place where others are present, *or* procures another to so expose himself." (Emphases

- 7 -

added). "[T]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices." *Davis v. Commonwealth*, 79 Va. App. 123, 138 (2023) (alteration in original) (quoting *Lewis v. Commonwealth*, 267 Va. 302, 314-15 (2004)). "Thus, the plain language of the statute indicates that there are [multiple] alternative ways to violate it," any one of which alone is sufficient. *Rompalo v. Commonwealth*, 72 Va. App. 147, 157 (2020). Kelley's act of exposing himself was sufficient under the statute if it was done in any place where others are present, regardless of whether he was actually seen by any other inmates.

In a series of cases, we have already held that the actions of an inmate in a restricted area not open to the general public can nevertheless qualify as indecent exposure under Code § 18.2-387. We explained that, for purposes of this statute, a public place "comprises places and circumstances where the offender does not have a reasonable expectation of privacy, because of the foreseeability of a non-consenting public witness." *Barnes v. Commonwealth*, 61 Va. App. 495, 500 (2013). For this reason, we affirmed the defendant's conviction for indecent exposure when he masturbated in front of a prison employee and eight other inmates while being held in the pretrial services unit at the Newport News Jail. *Id.* at 497. We also upheld the conviction of a prisoner "incarcerated in the restrictive housing unit at the Augusta Correctional Center, . . . [who] called a female prison librarian over to the window of his cell" and then exposed himself and masturbated in front of her. *Johnson v. Commonwealth*, 75 Va. App. 475, 477 (2022). And in *Cooper v. City of Va. Beach*, No. 2340-12-1, slip op. at 2-4, 2013 Va. App. LEXIS 388, at *3-5 (Dec. 17, 2013),[4] we affirmed an indecent exposure conviction where a defendant masturbated behind the curtain of a non-functioning shower stall near prison employees and other inmates.

---

[4] We cite this case as "informative," not as "binding authority." *Sidar v. Doe*, 80 Va. App. 579, 586 n.5 (2024) (citing Rule 5A:1(f)).

- 8 -

In all of these cases, we affirmed the convictions because we deemed the prison settings where these defendants exposed themselves to be public places, or places where others were present, for purposes of the governing obscenity laws. Kelley's conduct and the setting in which it occurred are indistinguishable from these prior cases. As in those cases, the place where Kelley exposed himself was a "public place" because of the possibility that non-consenting witnesses could observe his conduct. The bars to Kelley's cell were open, and Kelley would have been visible to any of the chaplains, nursing staff, sheriff's deputies, and others who routinely transited the area. The blanket that Kelley used as a screen had holes in it, left gaps uncovered, and was low enough to allow at least one fellow prisoner to look over it and see what Kelley was doing if he had wished. Because the observation of Kelley's conduct by adjacent foot traffic and fellow prisoners was reasonably foreseeable, he had no expectation of privacy in the cell where he exposed himself during the tablet call, whether screened by a blanket or not.

The record here establishes that non-consenting witnesses could have readily observed Kelley's conduct within the cell, even behind the makeshift blanket screen that he provided for himself. The evidence was, therefore, sufficient to sustain his conviction under Code § 18.2-387.

CONCLUSION

For all these reasons, the circuit court's judgment is affirmed.

*Affirmed.*